# THE STATE ex rel. KANSAS CITY et al. v. OLAF A. LUCAS, Judge.

### In Banc, July 1, 1911.

1. **PROHIBITION: Practice: Motion for Judgment on Return: Admission of Facts.** Where relators file a motion for judgment on the return of respondent to a writ of prohibition, the court, for the purposes of that motion, will take the statements in the return to be true.

2. **CLERKSHIP IN CITY DEPARTMENT: Dismissal: Injunction: Title to Office.** A suit by injunction by clerks and employees in the waterworks department of a city, to restrain the civil service board of the city from replacing them with other persons unless they submit to an examination, basing their claim to their positions upon a charter provision, and upon

an ordinance which they contend has not been annulled by a charter amendment, does not involve title to office, and the questions are cognizable in equity, and a court of equity has jurisdiction to restrain the city officers from ousting them until it can determine whether or not ordinances and charter permit their dismissal. If their rights depend on whether or not a certain ordinance is in force, and the defendants are trying to turn them out, a court of law could give them no adequate protection.

3. ————: **Order to Deliver Warrant: Contempt for Disobedience.** A court of equity has authority to order and compel the comptroller of a city to deliver to a servant of the city a warrant already issued; and a proposition that a court of equity has no jurisdiction at a preliminary hearing to order the comptroller to pay money to such servant under the pains and penalties consequent upon contempt of the court's order, has no application to such a situation.

4. ————: **Power of Officers to Dismiss: Prohibition.** A court of equity has jurisdiction to enjoin and restrain city officers from removing and dismissing employees in the city's waterworks department, if they have no such authority under the charter and ordinances; and since it is the province of the trial court, upon a trial and hearing, to determine whether or not the city officers may legally exercise that authority, and since error in the court's ruling may be corrected by appeal or writ of error, the Supreme Court will not prohibit the judge of the trial court from determining the authority of the city officers to remove and dismiss said servants and employees.

### Prohibition.

WRIT DENIED.

*John G. Park* and *A. F. Smith* for relator.

(1) A court of equity has no power to try the title to a public office or position. State ex rel. v. Aloe, 152 Mo. 466; State ex rel. v. Withrow, 154 Mo. 397; Arnold v. Henry, 155 Mo. 48; State ex rel. v. Seehorn, 143 Mo. App. 182; Mullin v. Tacoma, 16 Wash. 82; Corscaddon v. Haswell, 177 N. Y. 499. This rule applies to employees as well as to officers. Miller v. Warner, 59 N. Y. Supp. 956; Thomas v. Board, 56 Ill. 351; Healey v. Ditton, 39 La. Ann. 503; Morgan v. Nunn, 84 Fed. 551; Page v. Moffitt, 85 Fed. 38; White v. Berry 171 U. S. 366; Jones v. Williams, 139 Mo. 36. The proper remedy in such cases is mandamus. People ex

rel. v. Sutton, 88 Hun, 173; People v. Cahill, 188 N. Y. 489; Sutliffe v. N. Y., 132 App. Div. 831; People v. Kearny, 44 App. Div. 449. (2) Whether the positions of plaintiffs partook of the nature of public service or whether they were a mere matter of employment, a court of equity will not order specific performance of such contracts of employment. 22 Cyc. 856; 2 High on Inj. (4 Ed.), 1160; Arthur v. Oaks, 63 Fed. 310; Bronk v. Riley, 88 Hun, 489. (3) The order of the trial court was that defendants must not only keep the plaintiffs in service but they must pay them their salaries under penalty of commitment for contempt in case they refuse to do so. The result of this order would be imprisonment for debt, which is illegal. Sec. 16, art. 2, Constitution; Ex parte Crenshaw, 80 Mo. 447; Coughlin v. Ehlert, 39 Mo. 284; McMakin v. McMakin, 68 Mo. App. 57; In re Kinsolving, 135 Mo. App. 131. (4) The temporary injunction granted by the court forbade the city from removing plaintiffs for any cause or in any manner, thus usurping control over the management of municipal affairs in violation of the law. 2 Beach on Injunctions, sec. 1373; Board v. Oklahoma, 12 Okla. 286; 2 High on Inj. (4 Ed.), 1240; Andrews v. Knox Co., 70 Ill. 65; In re Sawyer, 124 U. S. 200.

*L. H. Waters* and *Leavel Hochland* for respondent.

The only question for the consideration of this court is whether the circuit court had jurisdiction over injunction suits of this character, and over the parties to said cause and of the subject-matter thereof, so as to determine whether said ordinance 1176 was a contract and whether said ordinance had been repealed or could have been repealed, so as to affect rights of persons accruing thereunder, and also whether a person is a public officer or an employee. We respectfully submit that the circuit court had such jurisdiction. Wilson v.

Berkstresser, 45 Mo. 283; State ex rel. v. Withrow, 108 Mo. 1; State ex rel. v. Reynold, 209 Mo. 189; State ex rel. v. Riley, 127 Mo. App. 469; State ex rel. v. Stobie, 194 Mo. 51; State ex rel. v. Judges, 104 Mo. 419; State ex rel. v. Burckhartt, 87 Mo. 538.

VALLIANT, C. J.—On the petition of relators a preliminary rule was entered April 25, 1911, addressed to the respondent, one of the judges of the circuit court of Jackson county, requiring him to show cause why a writ of prohibition should not be issued to forbid him taking jurisdiction in a cause pending in his division of the circuit court of Jackson county, wherein P. C. Folk and others are plaintiffs and the city of Kansas City and others are defendants. That is a suit in equity; the plaintiffs are clerks in the waterworks department of the city government. Three of the defendants constitute the Board of Civil Service Commissioners of that city, one is the Assessor and Collector of water rates, four compose the Board of Fire and Water Commissioners, and one is the Comptroller. The petition in that suit states substantially as follows:

When the plaintiffs entered into the service of the city as clerks in the waterworks department there was an ordinance of the city having special reference to employees in that department of the city's service, which is section 1176, Revised Ordinances of 1898, which provides: "That hereafter· no person shall be appointed, employed or discharged in any branch of the water works service, for or on account of political considerations. That the Board of Public Works and the Assessor and Collector of water rates, each in respect to the employees in their respective branches of the waterworks service, shall have the right to suspend and discharge employees under their control and direction for cause only; and this right shall be exercised only in the following manner, that is to say: Any employee who has heretofore or shall hereafter serve for such

length of time as to determine his efficiency and fitness for any given place, which period is hereby limited to six months, may be suspended by said board and assessor and collector respectively for cause; but the board or collector making such suspension, shall immediately furnish the employee suspended a statement in writing of the cause or causes of suspension, and he shall in all cases be entitled to a hearing before being discharged." The ordinance goes on to prescribe the mode of trial, and the consequence of the result thereof. The petition further states that by section 1 of article 18 of the city charter of 1909 it is expressly provided that "all ordinances, regulations and resolutions in force at the time this charter takes effect, and not inconsistent with the provisions thereof, shall remain and be in full force until altered, modified or repealed by the Common Council; that that ordinance, 1176, was at the time the charter took effect and still is in full force and effect," and its provisions secured to said city in said waterworks service, qualified and faithful employees, and provided for said water works department a civil service, based on merit, and that said section was not and is not inconsistent with the provisions of said charter relating to civil service, and has not been altered, modified or repealed by the common council," and that by virtue of the provision of that ordinance the plaintiffs are not amenable to the civil service examination provided by article 15 of the charter. It is also alleged that on entering the service of the city under the terms of the ordinance, a contract was created between the employee and the city, and as long as he faithfully performed his duty he could not be discharged except as provided by the ordinance; that plaintiffs have performed and are still performing their duties as clerks in the waterworks department and are entitled to their pay as such, and it is the duty of the defendant the Comptroller to issue warrants therefor on the City Treasurer, but that he has refused to do so; that the

defendants the Board of Fire and Water Commissioners are not under the jurisdiction of the defendants the Board of Civil Service Commissioners and have no right to remove the plaintiffs except for cause and in the manner as provided in ordinance 1176; that the defendants the Civil Service Commissioners have no right to require of the Board of Fire and Water Commissioners that they discharge employees to make places for persons whose names have been given them by the Board of Civil Service Commissioners; that the defendant the assessor and collector of water rates has a list of persons furnished him by the Civil Service Commissioners and threatens to put them in the places of the plaintiffs and will do so unless restrained by the injunction which is prayed, and that defendants the Fire and Water Commissioners will approve the appointments. There are also some statements in the petition designed to challenge the validity of article 15 of the charter, but for the purpose now in view they are immaterial. Plaintiffs pray a temporary restraining order to restrain the defendants from "interfering or attempting to interfere with the plaintiffs in their said positions until a hearing of this cause can be had and upon such hearing a temporary injunction be issued herein which plaintiffs pray may upon a proper showing be made permanent," and for general relief.

On the filing of the petition an order issued restraining the defendants "until the further order of the court from in any manner interfering with the plaintiffs, or either of them, in their positions as clerks in the office of the assessor and collector of water rates of Kansas City, Missouri, and from appointing or attempting to appoint any person or persons to the positions of the plaintiffs, or either of them, and from doing any act affecting the positions of the plaintiffs or either of them, or their compensation for their services as such or their right to said positions in said office of the assessor and collector of water rates." The order further directed

that the plaintiffs give bond, which was done, and that the defendants appear on March 30, 1911, and show cause why a temporary injunction should not issue.

On April 8th, there was an amended petition filed, which was substantially the same as the original petition, with the addition of three new names as plaintiffs; on the filing of the amended petition a restraining order like the one above mentioned was made.

The parties appeared by their attorneys in court on March 30th, and arguments for and against the granting of the injunction were heard. Counsel for defendants objected to the jurisdiction of the court, first, because a court of equity has no jurisdiction to determine a contest for a public office; second, the ordinance, 1176, on which plaintiffs base their case, had been repealed. Affidavits on both sides were filed and the application for an injunction was taken under advisement. While the matter was so pending, one of the plaintiffs, J. J. McIntyre, filed a petition in the cause stating that the defendant Gus Pearson, the Comptroller, had, since the issuance of the temporary restraining order, refused to deliver to him a warrant for his salary for one half the month of March, and prayed an order on him to show cause why he should not be punished for contempt as for disobedience of the restraining order.

It is alleged in the petition of the relators herein that on the filing of that petition a citation issued as prayed and that on the return thereof the court made the following order:

"Now this day, this cause coming on for hearing upon the order upon Gus Pearson to show cause why he should not be punished for contempt (of court) it is shown to the court that a warrant of Kansas City for the compensation of J. J. McIntyre, one of the plaintiffs herein, was issued by Kansas City and held by the defendant, Gus Pearson, comptroller of said city, and not delivered to the said J. J. McIntyre, and said Gus

Pearson showing to the court that he was advised by his counsel that said warrant should not [have] been issued to said J. J. McIntyre for the period from March 15th to April 1st, as it appears on its face, [but] only from March 15th to March 23d, the day when the Board of Civil Service Commissioners published an eligible list for the position occupied by said J. J. McIntyre; and

"Whereas, it is the order of this court that said warrant should be turned over to said J. J. McIntyre, and that he should be paid his wages from March 15, 1911, to April 1, 1911.

"It is therefore ordered that on the delivery of said warrant to said J. J. McIntyre the said Gus Pearson shall be purged of contempt in this action, and that the cost of said contempt proceedings shall be taxed against said Gus Pearson, and that on the payment of such costs the said Pearson be purged of contempt."

Thereafter on April 15, 1911, the court made the following order:

"Now on this day come the plaintiffs by their attorneys and the defendants by their attorneys and the court having read plaintiff's petition and the affidavits filed therewith and the arguments of counsel, and it appearing to the satisfaction of the court that upon the matters presented to the court the plaintiff and each of them are entitled to a temporary injunction as prayed for in their petition. It is therefore ordered by the court that a temporary injunction be and is hereby granted enjoining the defendants and each of them, their agents, servants and employees, until the further order of this court, from in any manner interfering with the plaintiffs or either of them in their positions as clerks in the waterworks department in Kansas City, Missouri, and from attempting to appoint any person or persons to the positions of the plaintiffs or either of them, and from doing any act affecting the positions of the plaintiffs or either of

them, or their compensation for their services as such or their rights to said positions in said waterworks department.''

The order required plaintiffs to give bond which was done.

The respondent filed his return herein on May 8, 1911, and on the same day relators filed their motion for judgment on the return. We must, therefore, for the purpose of that motion, take the statements in the return to be true. The return sets out all the orders made in the cause pending in the circuit court, and as stated in the return they do not differ from those stated in relators' petition, except in one clause in the order of April 15th, in the contempt proceeding. As stated in the relators' petition the order in that proceeding contained these words: ''Whereas, it is the order of this court that said warrant should be turned over to said J. J. McIntyre and that he should be paid his wages from March 15, 1911, to April 1, 1911.''

But the words ''and that he should be paid his wages from March 15th to April 1, 1911,'' are not in the order.

In the return it is said:

''That after the issuance of the restraining orders hereinbefore set out it was agreed by and between C. B. Leavel, of counsel for plaintiffs, and A. F. Smith, of counsel for defendants, in the presence of this respondent, that said Smith would have said defendant Pearson deliver the warrants which were already drawn in favor of these plaintiffs, and which were in said Pearson's hands only for the purpose of turning the same over to said plaintiffs; that said Pearson did turn over all of the warrants belonging to the plaintiff except the warrant of J. J. McIntyre, which warrant said Pearson refused to turn over to said McIntyre, giving as his reason for so refusing that he had been instructed to refuse to do so by said Smith; that on

account of the refusal of said Pearson as aforesaid, the court made the following order:

" 'Upon the petition of J. J. McIntyre for contempt, verified by affidavit, it is ordered that citation issue to Gus Pearson, one of the defendants herein, to appear before the Hon. O. A. Lucas, Judge of Division No. 2 of this court, on the 15th day of April, 1911, at 9:30 o'clock a. m., and show cause, if any he has, why he should not be punished for a contempt in disobeying the order of this court, in failing to deliver to said J. J. McIntyre a warrant for his salary as a clerk in the office of the Assessor and Collector of Water Rates of Kansas City, Missouri, for the last half of the month of March, 1911.'

"That on said 15th day of April, 1911, said Pearson also appeared before said court, and upon the statement of his said counsel that the failure to turn over said warrant was due to the advice of A. F. Smith, and upon the agreement of parties and promise of said Pearson to turn over said warrant to said McIntyre, this court purged said Pearson of contempt, on payment of costs of citation; and thereafter, to-wit, on the 18th day of April, 1911, the said Smith requested the court to make the record entry as set out in the petition filed herein, but that the court on its own motion struck out the words 'and that he should be paid his wages from March 15, 1911, to April 1, 1911, said order of the Board of Civil Service Commissioners, notwithstanding,' so that the record entry reads and is as follows:

" 'Now on this day this cause coming on for hearing upon the order upon Gus Pearson to show cause why he should not be punished for contempt, it is shown to the court that a warrant of Kansas City for the compensation of J. J. McIntyre, one of the plaintiffs herein, was issued by Kansas City and held by the defendant Gus Pearson, comptroller of said city, and not delivered to the said J. J. McIntyre, and said

Gus Pearson showing to the court that he was advised by his counsel that said warrant should not have been issued to said J. J. McIntyre for the period from March the 15th to April 1st, as it appears on its face, only from March 15th to March 23d, the day when the Board of Civil Service Commissioners published an eligible list for the position occupied by said J. J. McIntyre, and whereas it is the order of this court that said warrant should be turned over to said J. J. McIntyre.

" 'It is therefore ordered that on the delivery of said warrant to said J. J. McIntyre the said Gus Pearson shall be purged of contempt in this action and that the cost of said contempt proceedings shall be taxed against said Gus Pearson, and that on the payment of such costs the said Pearson be purged of contempt, to which order and ruling of the court the defendant Gus Pearson and his codefendants objected and excepted and still except.'

"This respondent states to this Honorable Court that the warrant in question was, as the court was informed and believes, a warrant that had already been duly executed by the proper authorities, was made payable to said McIntyre, and was in the hands of said Pearson for the sole purpose of turning the same over to said McIntyre and taking his receipt therefor.

"That this court has never at any time made any orders for the payment of any money, or to compel or attempt to compel relator Kansas City to pay any money to the plaintiff in said cause.

"This respondent submits that the circuit court as aforesaid has jurisdiction of the subject-matter of said controversy and of the persons of the relators, and did not exceed its jurisdiction therein for or because of any of the reasons or causes mentioned in relators' petition.

"Respondent further states that since being served with the order made by this Honorable Court respondent has refrained from all action in the premises and holds himself in readiness to comply with any orders of this court."

In justice to the learned counsel who drew the petition for the relators in this proceeding, we deem it proper to say that we are satisfied that the misstatement in the petition was a mere mistake on his part. In his statement filed herein he states that he himself wrote the order in question and submitted it to the court; as written by him, it contained the words: "and that he should be paid his wages from March 15, 1911, to April 1, 1911, said order of the Board of Civil Service Commissioners, notwithstanding," and he did not know that those words had been stricken out by the court. And apparently he had not discovered that fact when he filed his brief in this case, because on page 70, Point III, he says: "The order of the trial court was that defendants must not only keep the plaintiffs in service, but they must pay them their salaries under penalty of commitment for contempt in case they refuse to do so. The result of this order would be imprisonment for debt, which is illegal." And under that point in his brief authorities are cited to show that imprisonment for debt is forbidden by the Constitution.

The main points urged in relators' petition for a writ of prohibition are enumerated as six, but they may be condensed into three, viz.: 1st, that a court of equity has no jurisdiction to try title to a public office or to a position in the public service; 2d, it has no jurisdiction to order defendants to pay wages to the plaintiffs under penalty of imprisonment in case they do not do so; 3d, it has no jurisdiction to deprive relators of their power of suspension or discipline or removal, over the plaintiffs in said action, in any manner or for any cause.

I.   This is no contest for a public office; these plaintiffs are not officers, they are mere clerks, mere employees who have held their positions for years and who say that these defendants, the Civil Service Commissioners, have no authority at all to turn them out, and that the assessor and collector of water rates, and the Board of Fire and Water Commissioners can discharge them only for cause after a hearing.   They say that ordinance 1176 gives them that security for their positions and that that ordinance is in full force and effect.   On the other hand the defendants say that ordinance has been repealed by the new city charter; contra, the plaintiffs say that the new city charter itself, in section 1 of article 18, expressly declares that all ordinances in force at the date of the adoption of the charter shall continue in force until altered or repealed by the common council.   Those averments pro and con constitute a clear question of law for the trial court to decide.   If that ordinance is still in force the plaintiffs are entitled to its protection, and if their rights under it are invaded or threatened, a court of equity has jurisdiction to enjoin the wrongdoer.   A court of equity alone could give them protection.   If their rights depend on the question of whether or not that ordinance is in force, surely a court of equity is competent to try that question.   If that ordinance is in force and these defendants are trying to turn these plaintiffs out, contrary to its provisions, a court of law could give the plaintiffs no adequate remedy.   Suppose they should wait until they are turned out and then go into a court of law with their suit for damages, what sort of an action would it be?   Whom would they sue?   How would the question of liability of the defendants in their several capacities be adjusted?   If a court of law could afford them any redress at all it would be inadequate.   But a court of equity could take hold of the situation in the beginning, and if on a full and final hearing it

should adjudge the plaintiffs to be right in their contention it could prevent the wrong being done, and save the innumerable law suits; and on the other hand if it should adjudge that the defendants are right in their contention, that would be the end of the controversy; the plaintiffs would go out and peace would prevail.

II. The proposition that a court of equity has not jurisdiction at a preliminary hearing to order defendants to pay money to the plaintiffs under the pains and penalties consequent on contempt of the court's order, is correct as an abstract proposition of law, but it has no application to the facts of this case. The circuit court made no such order and has not threatened to do so. The warrants which the court ordered turned over to the plaintiffs had already been issued by proper authority and placed in the hands of the comptroller to be delivered to them; he delivered all except one, and that one he withheld on the advice of the attorney for the relators, who, after complaint was made to the court, advised that it also be delivered, and it was done.

That was one of the main grounds urged in the petition of relators for the writ of prohibition and, as above shown, it rested on a misapprehension of the fact.

III. The proposition that a court of equity has no jurisdiction to deprive the relators of their power to remove the plaintiffs from their positions in any manner and for any cause, is based on the assumption that the defendants have that authority. Of course if they have such authority a court of equity cannot deprive them of it; but if they have it not, yet assume it and attempt to exercise it to the injury of the plaintiffs, a court of equity, may forbid them doing so. This court cannot assume that the relators have, or

that they have not, the power claimed; the trial court must try that issue, and if it finds that the relators have that power it will dismiss the plaintiffs' bill, but if it should find that they have not that power lawfully, it will forbid them attempting to exercise it. If the trial court should err in its conclusions on this question the relators have an adequate remedy by appeal. Of course the remedy is not as speedy as it would be if this court should, in advance of the final hearing in the trial court, decide the questions of law involved, but that may be said of every case that comes here on appeal. That fact would not justify us in taking out of the hands of the trial court a case of which it has jurisdiction. In all that we have said above we have not intended to express any opinion on the questions to be tried by the chancellor in the cause pending before him, but we have only meant to say that the circuit court sitting in equity has jurisdiction of the cause in question, and that a writ of prohibition will not lie to interfere with the due course of the trial in that court.

We are favored with a very interesting brief on the part of the relators on the questions of law involved in the cause pending in the circuit court, but it would be an unwarranted invasion of that court's province if we should undertake to decide those questions.

Our conclusion is that the preliminary rule to show cause should be dissolved and the writ of prohibition denied.

All concur.