M. Kay STEIN,
Respondent-Cross-Appellant,

v.

Ray S. JAMES, Director Missouri Department of Revenue,
Appellant-Cross-Respondent,

and

Cheryl E. Reavis,
Appellant-Cross-Respondent.

No. WD 33770.

Missouri Court of Appeals, Western District.

April 12, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 31, 1983.

Application to Transfer Denied June 30, 1983.

John Ashcroft, Atty. Gen., Jefferson City, Michael L. Boicourt, Asst. Atty. Gen., for appellant-cross-respondent James.

Harvey M. Tettlebaum, Jefferson City, for appellant-cross-respondent Reavis.

Alex Bartlett, Bartlett, Venters & Pletz, P.C., Jefferson City, for respondent-cross-appellant Stein.

Before SOMERVILLE, C.J., and TURNAGE and LOWENSTEIN, JJ.

TURNAGE, Judge.

M. Kay Stein brought suit to enjoin Ray S. James, then the Director of Revenue for the State of Missouri, from terminating her as a fee agent for the Department of Revenue in West Plains, Missouri. The petition alleged that her constitutional rights had been violated, because her termination had been based solely on the fact that she was affiliated with the Democratic party. The petition also alleged that Stein's termination was contrary to Executive Order 81–2, which had been promulgated by Governor Bond on February 10, 1981. The court allowed Cheryl Reavis, who was named as Stein's successor, to intervene in the case.

The trial court entered an injunction restraining James from terminating Stein as a fee agent. The basis for the trial court's action was that Stein's termination violated Executive Order 81–2.[1] James and Reavis have appealed from that judgment, and Stein has appealed from the trial court's refusal to award her attorney fees.[2] Reversed.

The facts in this case were stipulated, and the trial court entered extensive findings of fact and conclusions of law. An understanding of both Stein's case in particular and the role of fee agents in general is crucial to the resolution of this case. Stein was appointed as a fee agent by the director of revenue during the administration of Governor Teasdale, a Democrat.

Stein had also been appointed as a fee agent by previous Democratic governors, but was replaced following the election of Governor Bond, a Republican, in 1972. Stein has been active in Democratic politics in Howell County, and she contributed time and money to the campaign of Governor Teasdale in 1976 and again in 1980. Governor Bond defeated Teasdale in the 1980 elections, and assumed office on January 12, 1981. Ray James, a Republican, was appointed as the director of revenue shortly after Bond assumed office. Shortly thereafter, James notified Stein that she was being replaced as a fee agent.

The only statutory provision relating to fee agents is § 136.055, RSMo 1978. That section provides that persons selected or appointed by the director of revenue to act as agents for the department shall sell motor vehicle licenses, and collect motor vehicle sales and usage taxes. In addition, the statute authorizes agents to receive compensation from persons purchasing licenses and conducting transactions with the agent, and sets out the amount of fees which the

---

1. The court indicated that while it felt that the termination had violated Stein's constitutional rights, it was not necessary to place the decision on that ground, because adequate relief could be granted on another ground.

2. Stein's petition alleged that she was basing her claim for relief on 42 U.S.C. § 1983 (1979).

That statute was not relied on by the trial court, and Stein does not advance it as a theory for recovery on this appeal, except to urge that she is entitled to attorney fees as the prevailing party. Stein contends, however, that the fact that she prevailed on a different theory does not bar an award of damages under the statute.

agent may charge such persons. The agent is not compensated by the state.

The agents are required to deposit all money collected for taxes and fees directly into state accounts, but they are not required to deposit or otherwise account for any money collected for their own fees. In the fiscal year of 1981, Stein's fee agent office handled approximately 35,000 transactions, from which Stein netted about $8,000.

The governor's staff makes recommendations to the director of revenue concerning the appointment of fee agents, and these recommendations take into account the political affiliation of the person involved. In practical terms, recommendation by the governor and his staff is tantamount to appointment.

Fee agents are appointed solely by means of a letter from the department indicating the creation of the fee agency. The agents are not commissioned pursuant to Art. 4, § 5 of the Constitution. Fee agents serve at the pleasure of the department of revenue, and have no set term or tenure rights. They are not protected by merit system statutes, are not administered an oath of office, and do not execute any bond to cover malfeasance or misfeasance of their duties.

There were 158 fee agents in the state of Missouri when Governor Bond was inaugurated in 1981, 21 of which were non-partisan civic organizations, and one of which was a municipality. After James was appointed, he terminated 89 Democratic fee agents and 3 non-partisan civic organizations. He subsequently appointed 104 fee agents, including 10 who were re-appointed. Of those 10, 5 were non-partisan organizations. The vast majority of the new appointees were Republicans, although a few were Democrats.

The department of revenue exercises a modicum of control over the general operation of the fee agents and their offices. The department holds training seminars for the agents and their employees, which are attended at the agents' expense. In addition, the department supplies most offices with the services of a photographer and

vision tester to assist persons in obtaining or renewing driver's licenses, and it supplies a few offices with a WATS telephone line. The hours which an office is open are selected by the agent, who must then notify the department. In addition, prior notice must be given to the department of revenue if a fee office is relocated.

However, the agents are, for the most part, autonomous in the day to day management of their offices. The agents are free to hire employees of their own choosing to operate the office with or without the presence or supervision of the fee agent, and they are solely responsible for withholding taxes from the salaries of their office employees. The fee agents pay their own operating expenses, including rent, employee salaries, office equipment, and supplies. They also pay self-employment tax on their own earnings from the office, and are not members of the state retirement system. The department does not have possession of keys or any other means of access to the fee office.

The fee agents are free to devote as much or as little of their own time as they desire to the operation of the office, and there is no department requirement that fee agents do any work in their offices at all. However, the department does hold agents responsible for the work of their employees. While Stein was a fee agent, she devoted the majority of her time to the operation of an H & R Block office in West Plains.

Fee agents do not make policy for the operation of the department, and there is little room for the exercise of discretion in the operation of their office. No confidential relationship exists between fee agents and the department of revenue or the governor's administrative staff.

Finally, fee agents are not listed as employees of the department in any official state manual, and James indicated that he did not consider fee agents to be employees of the state. The Attorney General issued an opinion in 1953 stating that fee agents are not state employees, and the social se-

curity administration has determined that for social security tax purposes, fee agents are not employees of the state.

In conjunction with her request for attorney's fees, Stein seeks to sustain the trial court's injunction on constitutional grounds, claiming that because she was a public employee, she was not subject to dismissal solely because of her political affiliation. At the time that the trial court entered its judgment in this case, there were conflicting decisions out of the U.S. District courts for the Eastern and Western Districts of Missouri on this issue. The Eastern District had held that fee agents are not employees of the state and thus can be terminated for purely political reasons, while the Western District had found that such agents are employees of the state and therefore cannot be terminated for purely political reasons.

This conflict was resolved by the Eighth Circuit in *Sweeney v. Bond,* 669 F.2d 542 (8th Cir.1982), *Cert. Denied* —— U.S. ——, 103 S.Ct. 174, 74 L.Ed.2d 143 (1982). The *Sweeney* court noted that the fee agents had argued that they could not be terminated because of their political affiliation. As authority, the fee agents relied on *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). The *Sweeney* court, however, held that *Elrod* and *Branti* applied only to public employees, and it added that it agreed with the Eastern District that fee agents are not employees of the State of Missouri. The *Sweeney* court justified its result as follows:

> The finding that fee agents are not public employees is well supported by the facts presented at trial. The Department of Revenue does not supervise the daily operations of the fee agencies, does not require the fee agents to account for fees collected and does not supervise the hiring and firing of employees within the offices. Fee agents are not paid by the state and are not required to work in their offices. Fee agents pay all of their own expenses, including rent, employees'

salaries and office equipment. Fee agents pay self-employment taxes and are not members of the state retirement system. Many fee agents hire others to supervise employees in the fee agent's office and do not participate directly in the operation of the office.

669 F.2d at 545–46.

The court concluded that because the agents are not employees of the state, they are not protected from dismissals based on their political affiliation.

While this court is not required to follow the case law of the Eighth Circuit, *Hanch v. K.F.C. National Management Corporation,* 615 S.W.2d 28, 33[6] (Mo. banc 1981), this court finds the reasoning in *Sweeney* persuasive. The *Sweeney* decision is also in accord with the reasoning in *Rider v. Julian,* 365 Mo. 313, 282 S.W.2d 484, 493[12] (Mo. banc 1955), which held that the fact that a person is not paid by the state is a strong indication that such person is not an employee of the state. The fact that fee agents are not compensated by the state, that they are autonomous with respect to their day to day operations, and that they are not listed as state employees, in combination with the other facts set forth above, convinces this court that fee agents are not state employees, and that *Sweeney* should be followed. Thus, there was no prohibition against Stein's being terminated for purely political reasons, and her constitutional argument does not support the trial court's judgment.

The trial court in this case rested its decision on a finding that the issuance of Executive Order 81–2 by Governor Bond on February 10, 1981, gave Stein a cause of action, and James and Reavis contend that this judgment should be reversed. The executive order in question contained a preliminary statement that the state's citizens must have complete confidence in the government's integrity, and that the conduct of state officials and employees should conform to the highest standards. The order also adopted standards of conduct for appointed officials and employees of the

executive branch. One of these standards was that unless provided for by the constitution or by statute, membership in a political organization, payment of dues to a political organization, and attendance at political events shall not be a condition for appointment or employment. Based on this standard, Stein contends that this order prohibited James from terminating her as a fee agent solely for political reasons, and that James' violation of this standard vested her with a cause of action for a breach.

Executive orders are rarely the subject of judicial opinions. The only case which this court has found to reach the issue of an executive order as forming the basis for a private individuals' cause of action is *Shapp v. Butera,* 22 Pa.Cmwlth. 229, 348 A.2d 910 (Pa.Cmwlth.1975).[3]

In *Shapp,* the court stated that there are three types of executive orders. The first category includes formal, ceremonial, and political orders. 348 A.2d at 913[2]. The second category consists of communications to subordinate executive branch officials regarding the execution of their executive branch duties. The third category includes orders which implement or supplement the state's constitution or statutes. The *Shapp* court held that the second and third classes can be distinguished by the presence of *some constitutional or statutory provisions* which authorize the executive order either specifically or by necessary implication. 913[3].

Statutory authority for executive orders is generally sparse. The only mention of executive orders in this state's statutes is found in Chapter 26. That chapter authorizes executive orders only with respect to governmental reorganization, energy, and flood control. Executive Order 81–2 does not fall within these areas, and thus it is not within the authority of Chapter 26.

Because there is no constitutional or statutory provision authorizing Executive Order 81–2 and because it directs the execution of the duties of executive branch officials, it falls under the second class enumerated in *Shapp. Shapp* held that this category of executive orders is not legally enforceable and that the governor cannot seek a court order to enforce them. The *Shapp* court further concluded that noncompliance with this type of order would result only in a penalty such as possible removal from office, demotion or reprimand as to the executive branch official disobeying the rule.

■ This court agrees with the analysis contained in *Shapp.* Absent some constitutional or statutory basis for an executive order, it cannot be considered more than a directive from the governor to his subordinates in the executive branch for the carrying out of their official duties. Applying *Shapp* to this case, Executive Order 81–2 lacked a constitutional or statutory basis, and it therefore did not create a legal cause of action. Thus, the only available means of enforcing it was through discipline by the governor.

■ In conclusion, because Stein was not a state employee, there was no constitutional basis on which to grant her injunctive relief, and because Executive Order 81–2 is merely an executive branch directive, it is not legally enforceable. Thus, the judgment preventing Stein's dismissal as a fee agent must be reversed. This reversal also disposes of Stein's appeal, in that she is not

---

**3.** In its disposition on this issue, the trial court cited other cases, none of which this court finds to be on point. One of these cases is *McKittrick v. Brown,* 337 Mo. 281, 85 S.W.2d 385 (Mo. banc 1935). The trial court viewed *McKittrick* as authority for the proposition that an executive order has legal effect and may form the basis for a private individual's cause of action. Upon examination, however, the *McKittrick* case held only that a member of the national guard whom an executive order had mobilized for flood duty should be tried as a member of the military rather than as a civilian. The question of an executive order's forming the basis for a private individual's cause of action was not addressed.

The trial court also relied on *State ex rel. Missey v. The City of Cabool,* 441 S.W.2d 35 (Mo.1969), which held that the city could not dismiss certain employees because of their union activities. This case is distinguished by the fact that the parties in that case, unlike fee agents, were state employees.

entitled to recover attorney fees under § 1983 because of her failure to prevail.

The judgment is reversed.

All concur.