THE STATE ex rel. THOMAS B. ALLEN et al., Judges of Circuit Court of Buchanan County, v. JOHN M. DAWSON, Circuit Judge, and JOHN BENDEL et al., Judges of County Court, and BUCHANAN COUNTY.

In Banc, October 1, 1920.

1. **INJUNCTION: Right to Maintain: No Property Right.** If the petition discloses that no property right is sought to be protected by the writ of injunction, and does not allege that some property right has been or is about to be violated, but merely seeks to enjoin certain judges from performing a right, duty or privilege conferred upon them by a certain legislative act, on the sole ground that said act is unconst'tutional, it invokes no ground of equitable cognizance, and the circuit court is without jurisdiction to hear it. The acts to be performed in pursuance to said act are political in their nature, and a court of equity has no jurisdiction to restrain their exercise.

2. ————: ————: **Action at Law: Quo Warranto.** Injunction cannot be maintained where plaintiffs have an adequate remedy at law; and an action in *quo warranto* is an adequate legal remedy to prevent circuit judges from exercising the privilege or duty or right to classify and determine the number of deputies to be employed in the various county offices, conferred upon them by statute, and in such proceeding the constitutionality of such statute may be determined.

3. **QUO WARRANTO: Scope: Franchise.** The statute (Sec. 2631, R. S. 1909) cannot be confined to ousting persons from a public

State ex rel. Allen v. Dawson.

office, but includes every case where "any person shall usurp, intrude into or unlawfully hold or execute any office or franchise," and the right given by a legislative act to circuit judges to classify and designate the number of deputies to be employed in the various county offices is a franchise. There are many franchises other than purely corporate franchises.

4. ———: ———: Franchise: Definition. The word franchise is a generic term. Unless there is something in the context to indicate to the contrary, the usual sense in which the word is generally understood is that of a positive right or privilege to do something otherwise legally incompetent. To be or to exercise the powers of a corporation, or to exercise the duties and perform the functions of a public office, is a franchise. A franchise is likewise a constitutional or statutory right, or privilege, especially a political one, and particularly, the suffrage or right to vote. And in this case it is *held* that the duty or right or privilege of circuit judges to classify and determine the number of deputies to be employed in the various county offices, conferred upon them by legislative act, whether such act be constitutional or not, is a franchise; and hence *quo warranto* is available to test the legality, or constitutionality, of the act conferring the, power or privilege.

5. ———: ———: ———: No Precedents. The mere fact that "single instances" arrive late at the bar of justice is no reason for denying them admission or relief. The fact that no case can be found in the books which clearly holds that *quo warranto* is the proper remedy to determine the right of circuit judges to classify and determine the number of deputies to be employed in the various county offices—a privilege conferred upon them by legislative act and one it is alleged they are threatening to exercise—is not conclusive that *quo warranto* will not lie to prevent them from further exercising such privilege or franchise.

6. PROHIBITION: Court of Equity: Political Acts. Prohibition is the proper remedy to prevent a court of equity from attempting to exercise jurisdiction of an injunction suit in which it is sought to enjoin acts which are merely political.

## Prohibition.

PRELIMINARY RULE MADE ABSOLUTE.

*Strop & Mayer* for relators.

(1) The petition filed in the circuit court discloses that the only purpose of the suit was to enjoin relators

from performing certain official acts for the public imposed upon relators by the statute. It is not even inferentially alleged that any property right is involved. In such a case, a chancery court has no jurisdiction. State ex rel. v. Aloe, 152 Mo. 466; Arnold v. Henry, 155 Mo. 48; Ex parte Sawyer, 124 U. S. 200, 31 L. Ed. 402; Tappen v. Gray, 7 Hill, 259; Cochran v. McCleary, (Opinion by Judge Dillon), 22 Iowa, 80; Heffran v. Hutchins, 160 Ill. 550; 10 R. C. L. 342-3, secs. 92-93. (2) Prohibition is the proper remedy. State ex rel. v. Aloe, 152 Mo. 466; Arnold v. Henry, 155 Mo. 48; Weaver v. Toney, 107 Ky. 419, 50 L. R. A. 105.

*Culver & Phillip* and *Randolph & Randolph* for respondents.

(1) Relators' motion for judgment on the pleadings admits all facts set up by proper pleading in respondents' return. State ex rel. Ellis v. Elkin, 130 Mo. 90; Ward v. Ryan, 166 Mo. 646; State ex rel. Henson v. Sheppard, 192 Mo. 497. (2) Relators have an adequate remedy at law. Where there is an adequate remedy at law prohibition will not lie. State ex rel. McNamee v. Stobie, 194 Mo. 45; State ex rel. Warde v. McQuillin, 226 Mo. 256; Schubach v. McDonald, 174 Mo. 163. (3) The statutory remedy by injunction was the proper proceeding. Sec. 2534, R. S. 1909. "Equity will not suffer a wrong to be without a remedy." (4) The case does not involve political rights, but involves the right of the county to transact the county business, under Section 36 of Article VI of the Constitution of Missouri, and the right of the county court to restrain these relators from making entries in writing upon the records of the county court. (5) The act in question is in violation of Article 3 of the Constitution of Missouri, in that it does not keep separate the three departments of government and confers a power on the judiciary belonging to other departments of government. State ex rel.

Young v. Brill, 111 N. W. 639, 100 Minn. 499; State v. Rogers, 73 N. E. 461, 71 Ohio St. 203; Schwarz v. Town of Dover, 53 Atl. 214, 68 N. J. L. 576; Supervisors of Election, 114 Mass. 247, 19 Am. Rep. 341; Moreau v. Freeholders of Monmouth, 53 Atl. 208, 68 N. J. L. 480; State ex rel. v. Neble, 117 N. W. 523, 19 L. R. A. (N. S.) 578. (6) Said act is in violation of Section 1 of Article VI of the Constitution in that it confers a power other than judicial upon the judges of the circuit court; and also in violation of Section 22 of Article VI of the Constitution for the same reason stated. (7) Said act is in violation of Section 28 of Article IV of the Constitution in that the title to said act does not clearly express the contents thereof, and said act contains more than one subject. State ex rel. v. Distilling Co., 273 Mo. 103; State v. Great Western Tea & Coffee Co., 171 Mo. 634; State ex rel. v. Revelle, 257 Mo. 529; St. Louis v. Wurtman, 213 Mo. 131; State v. Sloan, 258 Mo. 305; State v. McEniry, 269 Mo. 228; St. Louis v. Weitzel, 130 Mo. 131. (8) Respondents, County of Buchanan, John Brendel and Jefferson Sampson, are entitled to be discharged from the rule to show cause. They are assuming no judicial power. Prohibition lies only against judicial officers while assuming to exercise judicial functions. Kalbfell v. Wood, 193 Mo. 675; State ex rel. McAnally v. Goodier, 195 Mo. 551.

WILLIAMS, J.—This is an original proceeding in prohibition whereby relators (the three circuit judges of Buchanan County) seek to prohibit the Honorable John M. Dawson, sitting as Circuit Judge of the Circuit Court of Buchanan County, from entertaining jurisdiction in a certain injunction suit now pending in said court, on the ground that said circuit court has no jurisdiction of the subject-matter of said suit.

The injunction suit was instituted by two of the judges of the County Court of Buchanan County, and Buchanan County, as plaintiffs, against the three cir-

cuit judges of said county (the three relators herein), as defendants, and in substance alleged:

1st.   That by the terms of Act of the General Assembly (Laws 1919, page 670) "it is made the duty of a majority of the judges of the Circuit Court of Buchanan County, Missouri, to fix the number of deputies in each of the offices of Buchanan County, Missouri,  . . . and to classify such deputies and assistants into Classes A and B as provided" in said law.

2nd.   That said circuit judges are undertaking to act under said law to fix the number of deputies in said county offices and to classify them, and that unless restrained will do all the things required of them by said law.

3rd.   That said law is in conflict with the Constitution of the State of Missouri in that:   (a) It violates Section 1 of Article VI, because the power conferred upon said circuit judges by said statute is not a judicial power;   (b) · It conflicts with Section 22 of Article VI, because it invests the circuit judges with jurisdiction over appointive offices;   (c)  It conflicts with Section 36 of Article VI, which gives to county courts the right to transact all county business, and said act affects the amount of county revenues which is to be paid for the employment of  deputies in the county offices;   (d) It conflicts with Section 28 of Article IV in that the title to said act does not clearly express the general contents thereof, and said act contains more  than one subject;   (e) It violates Article III, because it does. not keep separate the three departments of State government.

4th.   That plaintiffs have no adequate remedy at law for the purpose of enabling them to exercise proper control over the affairs of the county in the respect above stated.

The prayer of the petition asks that the defendants be permanently enjoined from performing any of the privileges or duties provided by said act.

The defendants answered in the injunction suit, admitting that unless enjoined they will perform the du-

ties imposed upon them by said act; deny that said act is unconstitutional, and further allege "that plaintiffs have no right or power to institute this suit; that said suit has not been instituted by any person having authority to institute such suit; that no property or property right of any or all of said plaintiffs is affected in any way whatever by said act, whether said act be held to be constitutional or otherwise, and the petition herein shows that the plaintiffs are not entitled to any injunctive or other equitable relief" and "defendants deny the right and power and jurisdiction of this court to interpose in this case for the protection or regulation of rights which are merely political and where no civil or property right is involved."

All of the judges of the Circuit Court of Buchanan County being parties to the injunction suit and therefore disqualified to try the case, Hon. John M. Dawson, Judge of the Fourth Judicial Circuit, was called in to sit in the case.

The Act of 1919 (which is intended to apply to counties which now contain or may hereafter contain a city of 75,000 inhabitants and less than 200,000 inhabitants) provides:

"The collector of revenue, clerk of the circuit and criminal courts, clerk of the county court, assessor, recorder of deeds, county treasurer and any other county officer, in the discretion of the majority of the circuit judges of the county, shall each be entitled to such a number of deputies and assistants, to be appointed by said county officer, as the majority of the circuit judges of the county shall deem necessary for the prompt and proper discharge of the duties of their various offices, and such deputies and assistants shall be divided into classes as follows, and be paid in the same manner as the officers: Class A. assistants or deputies; Class B, office clerks and copyists. Class A shall be paid fifteen hundred dollars per year. Class B shall be paid twelve hundred dollars per year. The decision of such majority of circuit judges to be in writing, specifying the number

of deputies and assistants for each officer and their classes, and spread upon the record of the county court.'' Approved May 26, 1919.

I. A mere reading of the petition filed in the injunction suit discloses that no property rights whatever are in any manner sought to be protected, nor does the petition allege, or attempt to allege, that any property right has been violated. It merely seeks to enjoin the three persons named from performing the right, duty or privilege conferred upon the majority of them by the Act of 1919, supra, on the sole ground that said act is unconstitutional in the respects mentioned.

*Injunction: Political Right.*

It will thus be seen that the injunction suit is, to say the least, unique. We are cited to no case holding that a court of equity has jurisdiction to issue an injunction under such conditions, nor has diligent search upon our part disclosed such a case.

The facts alleged, or attempted to be alleged, in the petition certainly do not invoke any of the recognized heads of equity jurisdiction.

On the other hand it is a well recognized rule that a court of equity has no jurisdiction to restrain acts which are merely political in their nature and effect. [State ex rel. v. Aloe, 152 Mo. 466, 1. c. 480; 4 Pomeroy's Equity Jurisprudence (4 Ed.), par. 1743 and 1746 and cases therein cited; 10 R. C. L. 342-343; 1 High on Injunctions, sec. 20b; 22 Cyc. 757.]

The facts alleged, or attempted to be alleged, in the petition in the injunction suit disclose the violation of no right other than a purely political one, and since no facts are alleged which invoke any of the different grounds of equity jurisdiction it clearly follows under the numerous authorities above cited that the circuit court in the case at bar is without jurisdiction to grant the injunctive relief, prayed.

II. Neither are we able to agree with respondent that the plaintiffs in the injunction suit have no adequate

284 Mo.—28

remedy at law as is alleged in their petition for the injunction. On the other hand we are of the opinion that an adequate legal remedy is furnished by a proceeding in *quo warranto*.

**Quo Warranto.**

It is true that title to an office is not involved, because the Act of 1919, supra, does not create or undertake to create a public office. It merely confers, or attempts to confer, upon certain designated persons certain privileges, rights and duties by them to be performed. These privileges and powers are directly granted by the sovereign State by the legislative act in question, and would not exist but for said grant.

Our statute on *quo warranto,* Section 2631, Revised Statutes 1909, includes every case where "any person shall usurp, intrude into or unlawfully hold or execute any office or *franchise.*"

We are of the opinion that the right given by the Act of 1919, supra, to the majority of the Judges of the Circuit Court of Buchanan County to determine the number and to classify the deputies to be employed in the offices of said county is a *franchise,* within the meaning of the above mentioned statute.

It is true that the great majority of *quo warranto* cases dealing with franchise rights are cases which deal with corporation franchises. But there are many franchises other than purely corporate franchises. The word "franchise" is a generic term. Webster's New International Dictionary, under the title, franchise, gives among others the following definitions: "Franchise is a word of extensive signification. It is defined by Finch, whom all subsequent writers have followed, to be 'a royal privilege in the hands of a subject.' 15 Serg. & R. (Pa.) 127-130. . . . The usual sense (in which it [franchise] is to be generally understood without something in the context to indicate the contrary) is that of a positive right or privilege to do something otherwise legally incompetent; such as, the right to operate a ferry or a railroad; to be, and exercise the

powers of, a corporation; *to exercise the duties and perform the functions of a public office.*" (Italics ours)

"It is a constitutional or statutory right or privilege, especially a political one, and particularly, the suffrage or right to vote."

The fact that no case can be found in the books which clearly holds that *quo warranto* is the proper remedy to determine the right to exercise the privilege attempted to be exercised by the defendants in the injunction suit is not conclusive that *quo warranto* will not lie in such cases. The mere fact that "single instances" arrive late at the bar of justice is no reason for denying them admission and relief. The only concern is whether under well established principles of the law relief can be granted. While we find no case holding in express terms that *quo warranto* is the proper remedy, neither do we find any authority holding that it is not the proper remedy. However, we find cases announcing principles which point unerringly to *quo warranto* as the only proper remedy in instances like the one now held in judgment and others which by analogy greatly strengthen the belief that such is the proper remedy.

There is not much learning to be found upon the exact question under review. The clearest discussion which we have been able to find on the subject is to be found in Cochran v. McCleary, 22 Iowa, 75. In that case in an able opinion by Dillon, J., it was held that the right to preside over the meetings of a city council is a "franchise" within the meaning of the *Quo Warranto* Act of Iowa and that *quo warranto,* and not injunction, was the proper remedy to determine who was entitled to exercise that right. In that case many authorities are examined, including: Reynolds v. Baldwin, 1 La. Ann. 162, which held that the right of the recorder who was *ex officio* president of the council to vote in cases where there was a tie was a franchise, and that the person who usurped that right usurped a

franchise and could be ousted from such usurpation by a proceeding in *quo warranto;* Rex v. Williams, 1 Burrow, 402, holding that "an information in the nature of *quo warranto* may be granted at common law for illegally holding a court of record within a charter borough and presiding therein in the absence of bailiffs, the defendant not being one of them. The reason is that this is an usurpation of the franchise of holding the court."

In the case of Cochran v. McCleary, supra, at page 85, DILLON, J., speaking for the court, used the following clear and forceful language:

"The defendant had, as we have seen, no right, by virtue of his office as mayor, to preside over the meetings of the council. That he supposed he had such right, we have no reason to doubt, but this would not make his claim to preside over and act as a member of the council any the less unfounded. Insisting that he had the legal right to preside, the defendant, against the wishes of a majority but probably in accordance with the wishes of a minority of the council, sought to exercise this right by force: so the president *pro tem.* claimed and sought to exercise his right to preside by force. . . .

"But the inquiry which now concerns us is as to the proper legal mode to test the question, whether the mayor or the president *pro tem.* had the legal right to preside. In England, and in the different states in this county, the law, solicitous to furnish a remedy for every invasion of legal right, has provided that of *quo warranto* or an information in the nature of a *quo warranto,* to determine the title of an officer to his office, and to determine the right of any person or corporation to exercise a public franchise. . . .

"Now our statute (Rev. ch. 151) on the subject of informations, finds its original in the Statute of 9 Anne, chapter 20., Ours, however, is broader, and extends to cases not embraced in the English act. Our statute (Sec. 3732) provides that, 'An information may be filed

against any person unlawfully holding or exercising any public office or franchise within the State, or any office in any corporation created by the laws of this State,' . . . or 'when corporation exercise powers not conferred by law.'

"Plaintiffs claim that the statute does not apply, because they do not deny that the defendant is mayor, and do not question his right to discharge the appropriate duties of that office. On the contrary, they admit that the defendant is mayor, and say they only seek to restrain him from interfering with matters which do not pertain to his official duties or powers.

"The Statute of Anne contains the same words, 'office' and 'franchise' as ours, although these words are used in our statute without any restriction to municipal franchises or officers. Our statute further provides that, 'When several persons claim to be entitled to the same office or franchise, an information may be filed against all or any portion thereof, in order to try their respective rights thereto.' [Sec. 3743, and see Secs. 3744-5, as to form of judgments.]

"It may be conceded that the present is not the case of a contest for an 'office,' and that right of presiding over the council is not the 'holding and exercising of a public office,' within the meaning of our statute (Chap. 151) of *quo warranto*. [Sections 3732, 3743, supra.]

"But the question remains, whether the right to preside over the meetings of the council is a 'franchise,' within the meaning of the same statute.

"If it is, and if the claim to exercise and hold it is unlawful, then an information under Chapter 151 is the proper legal mode to exclude the illegal claimant from the usurped right.

"We have examined the English and American adjudications with great care, to see whether the remedy by *quo warranto* would lie to test the right of a person

to preside over a public corporation. And upon the subject we have no doubt. The authorities are uniform to the point that, to determine a question of this character, *quo warranto* is the proper, if not, indeed, the only legal remedy. We cite some of the more pertinent authorities in a note, some of which, it will be observed, are directly in point.

"The adjudications proceed upon this reasoning: a public corporation can only emanate from proper authority—in this country from the Legislature. The right to preside therein is a legal right conferred by law. *This right is a 'franchise' or privilege, given by law, and therefore, if invaded, the law affords a means of redress, a remedy, and this remedy is by quo warranto, or information, in that nature."* (Last italics ours).

So in the case at bar, applying the principle announced in the above case, we think the deduction a fair one that the right to determine the number of deputies in the county offices of Buchanan County is likewise a legal right conferred by the sovereign State upon the citizen, and is as clearly within the definition of the word franchise as is the right to preside over a city council.

The Missouri statute on *quo warranto* is sufficiently similar to the Iowa statute above mentioned that the above case may be considered as persuasive authority here.

We therefore hold that the rule announced in the above case is applicable to the facts of this case, and that *quo warranto* is the proper remedy.

III. In the case of State ex. rel. v. Aloe, *supra*, it was held that prohibition is the proper remedy to prevent a court of equity from attempting to exercise jurisdiction of a suit which sought to enjoin acts which were merely political. We see no reason why the doctrine of that case should not be applied here. It therefore follows that the perliminary rule should be made absolute.

Prohibition.

It is so ordered.

*Walker C. J., Graves* and *Williamson, JJ.,* concur; *Blair, J.,* concurs in paragraph one and the result; *Goode, J.,* concurs in paragaph one and result but expresses no opinion as to paragraph two; *Woodson, J.,* absent.