STATE OF MISSOURI at the relation and to the use of PALMER B. BAUMES, Commissioner of Parks and Recreation of the City of St. Louis and HENRY S. CAULFIELD, Director of Public Welfare of the City of St. Louis, Relators, v. WILLIAM L. MASON and DAVID J. MURPHY, Judges of the Circuit Court of the City of St. Louis.— 154 S. W. (2d) 67.

Court en Banc, September 15, 1941.

*Joseph F. Holland, George L. Stemmler* and *Albert Miller* for relators; *Oliver Senti, James V. Frank* and *Charles F. Hamilton* of counsel.

438

440

*Jerome F. Duggan* for respondents.

ELLISON, J.—Prohibition. Relator Caulfield is the Director of Public Welfare and relator ·Baumes, his appointee, is Commissioner of Parks, in the City of St. Louis. Respondents Mason and Murphy are, respectively, judge pro tempore and regular judge of the circuit court, Division 3. Relators seek to prohibit respondents from proceeding further in an injunction suit pending in said court. To relators' petition for prohibition is attached a copy of the pe-

tition in said injunction suit, which latter is made a part of the former. Both are incorporated in our writ, and respondents have made return thereto. Relators have filed a motion for judgment on the pleadings. Therefore all uncontroverted facts well pleaded in the prohibition petition will be accepted as true. But well pleaded averments in the return controverting the petition, or alleging new master, also will be taken as true. [State ex rel. Cytron v. Kirkwood, 340 Mo. 185, 189(1), 100 S. W. (2d) 450, 451(1); State ex rel. Warde v. McQuillin, 262 Mo. 256, 260, 171 S. W. 72.]

As alleged in the prohibition petition and shown in the injunction petition, the injunction suit was brought jointly by 52 employees in various capacities of the Park Department, of which relators have charge, though relator Caulfield was not made a party to that suit. The 52 plaintiffs instituted the suit as a class action for themselves and all others similarly situated on August 28, 1941. The petition was verified by one of the plaintiffs. They alleged there were some 700 employees in the Park Department when relator Baumes took office on or about July 1, 1941, all of whom had been so employed from one to eight years theretofore; that at all said times there was in full force and effect in said city a civil service system which placed them in the classified service pursuant to "Sec. 2, Article XXVIII" of the City Charter, reading as follows: "The classified service shall comprise all not specifically included by this Charter in the unclassified service." (The correct designation of this provision is Sec. 3 (2), Art. XVIII.)

The injunction petition further alleged that Sec. 3, Art. VIII of the Charter required relator Baumes upon assuming office to take an oath which recites, among other things, that (italics ours): "he will support the Constitution of the United States and of this State and the Charter and ordinances of the City; *that he will be influenced only by the consideration of fitness in the appointment, promotion, demotion, suspension or discharge of officers or employees*; that he will not expend nor authorize the expenditure of money otherwise than for adequate consideration and efficient service to the City and will faithfully discharge the duties of his office or employment." The petition also alleged that Sec. 12, Art. XVIII provides (italics ours): "No person in the classified service or seeking admission thereto shall be appointed, reduced, suspended, discharged or in any way favored or discriminated against *because of his political* or religious opinions or affiliations." Relators do not dispute that these provisions are in the Charter, and, furthermore, we take judicial notice of the provisions of the St. Louis Charter, Wiget v. St. Louis, 337 Mo. 799, 802(1), 85 S. W. (2d) 1038, 1040, 100 A. L. R. 1284.

The injunction petition further alleged that the plaintiffs all are members of the Democratic Party, and that the relator Baumes is a member of the Republican Party; that he has discriminated against

442

all the employees of the Park Department .who were in office when he was appointed; that such discrimination was caused by their differences in political opinion and faith, in violaton of Sec. 12, Art. VIII of the Charter; that since his appointment to office he has illegally discharged some 240 employees of the Park Department, and only a few days before the filing of the suit had publicly announced he would discharge 190 more employees of said Department.

It was further alleged that plaintiffs had no means of knowing whether any or all would be included in said wholesale discharge, and that every discharge theretofore made and threatened was and would be political in nature, and therefore illegal and in violation of said Sec. 12, Art. VIII of the Charter; that there was then pending before the electorate of St. Louis a new civil service bill providing for a Merit System, known as Amendment No. 3, which would insure the plaintiffs of being retained in office irrespective of their political faith and beliefs; that relator Baumes, knowing this, intends to act illegally in the discharge of all of said 700 Park Department employees, and to replace them with persons of his own political faith and opinion, contrary to his said oath and said Charter; that no complaint has been lodged against plaintiffs by any superior officer respecting inefficiency, neglect of duty, sobriety, honesty, industry, unskillfulness, lack of experience or inability to perform their work; that they had no adequate remedy at law.

So much for the injunction petition. Relators' petition for prohibition alleges that 20 of said injunction plaintiffs are day laborers and temporary employees, whose compensation is fixed on a day basis, and who may be discharged any time without notice; and that all of the plaintiffs may be discharged with or without cause, pursuant to Sec. 7, Art. XVIII of the Charter, which provides (italics ours): "The appointing officer may suspend or discharge or reduce in rank or compensation any officer or employee under him, *with or without cause, except as in this charter is otherwise provided.*" The petition then quotes Sec. 12, Art. XVIII (already set out in this opinion) and Sec. 1779 of the Revised Code of St. Louis, 1936, which requires 15 days' written notice for the discharge of any employee hired at a monthly salary, who has been in service more than one month. All of these who have been discharged, it is alleged, were given the necessary notice.

Then, after summarizing plaintiff's petition for injunction (which we have already reviewed), the petition for prohibition alleges the respondent Mason, without notice to or appearance by relator Baumes, on the day the injunction suit was filed, August 28, 1941, entered and caused to be served on Baumes an order to appear in court on September 18, 1941, and show cause why a temporary injunction should not be granted as prayed. Further on August 28 respondent Mason issued a temporary restraining order enjoining relator Baumes from

discharging, suspending, demoting or laying off the plaintiffs because of their political faith or opinion or in any wise interfering with the plaintiffs performing their respective duties, labor and work, as faithful, sober, industrious, skillful, honest, experienced employees of said Park Department. This order was conditioned on plaintiffs giving a $500 injunction bond, which was contemporaneously filed and approved, with one George B. Tracy as surety.

The day thus set for the hearing on said order to show cause, September 18, 1941, will be two days after September 16, the date of the election on said Merit System, and the same will be immediately effective if it carries. And relators allege, on belief, that said hearing was intentionally thus set to keep said restraining order in force, and to prevent relator Baumes from having a hearing on said order to show cause until after said election. The petition for prohibition next alleges that there was no emergency requiring the issuance of said restraining order without notice to or appearance by relator Baumes; that his office was only two blocks away and the City Counsellor's office was across the street; and that notice of intention to apply for said injunction could have been promptly served.

Continuing, the prohibition petition alleges respondent Mason exceeded his jurisdiction, or had no jurisdiction, in entering the orders aforesaid, and that the same were void; but that nevertheless the plaintiffs in said injunction suit and the persons at whose instigation it was filed, are threatening to cause the respondent judges to cite relator Baumes for contempt if in the discharge of his duties he should discharge, suspend, demote, or lay off any of "said employees," or do any act tending in anywise to interfere with them in the performance of their respective duties, labor and work; that by reason of said orders and threats relator Baumes is placed in constant jeopardy of imprisonment, and interfered with and intimidated in the performance of his duties; and that the plaintiffs under the protection of said court orders are flaunting his authority and becoming insubordinate, to the prejudice of proper administration of said Park Department.

The prohibition petition further alleges that the Charter of St. Louis was adopted pursuant to Secs. 20, 21, 22 and 23, Art. IX, Constitution of Missouri; that the provisions of said charter supersede those of the general law when not inconsistent or inharmonious therewith; that said restraining order prevents relators from exercising the powers vested in them by said Charter under authority of said Constitutional provisions, and therefore violates the latter; and that respondents, by assuming to control the administration of said Park Department through the exercise of judicial power, are acting in the contravention of Article III of the Constitution, which divides the power of the State into three separate magistracies, executive, legislative and judicial.

Further it is charged the act of respondent Mason in issuing

said temporary restraining order without notice to or appearance by relator Baumes was arbitrary and an abuse of his jurisdiction; that plaintiffs' petition for injunction failed to state a cause of action in equity and cannot be amended to state one because in essence the effort is to try title to public office and position, namely the right of said employees to retain their respective positions after they have been *lawfully* discharged; that there is a misjoinder of plaintiffs in the injunction suit and the same cannot be a class action because some of the employees of said Park Department, including a part of the named plaintiffs, are not in the classified service, and have not been discharged, or received notice of discharge, or been threatened with discharge; that the cause of action of each employee is separate and based on a separate and distinct employment.

Finally the prohibition petition alleges that all, or practically all, of the aforementioned employees were appointed under ▉ the preceding Democratic city administration, which had been in office for eight years; and that said injunction suit was inspired by one Tracy, a member thereof, and was not brought in good faith; that in view of the arbitrary action of respondent Mason in accepting jurisdiction of said injunction suit without notice to or appearance by relator Baumes, and in setting the hearing on said show cause order for September 18, two days after the election on said Merit System, it is useless and futile for relators to apply to said circuit court for relief; that they have no adequate remedy by appeal; and are therefore dependent on intervention by this court through the extraordinary remedy of prohibition. Then follows the prayer.

Respondents' return specifically admits all formal matters pleaded in the petition for prohibition. But they affirm that a vast majority of the 700 employees of the Park Department, to be appointed by relator Baumes as Commissioner of Parks, were required to pass open, competitive examinations and be subject to rules and proceedings of the Efficiency Board under Sec. 4, Art. XVIII of the Charter; and that all of the named plaintiffs in said injunction suit were so appointed. This means they were in the civil service. For want of information respondents deny that 20 named plaintiffs in said injunction suit are day laborers and temporary employees, subject to discharge at any time without notice, and paid on a daily basis; that notice had been given to any employees hired on a monthly basis who had been discharged; and that plaintiffs or other persons had threatened to cause respondents (relators?) to be punished for contempt. They further deny that relator Baumes has been intimidated or is in jeopardy; and affirm that neither they (respondents) nor anyone acting for them has made any threats.

In particular respondents deny that the return date, September 18, on said order to show cause, was intentionally delayed because of said Merit System election; and affirm relator Caulfield and all his

counsel should know the rule of the Circuit Court of the City of St. Louis is never to set any hearing during the last week of any court term, except by agreement; and that the last week of the June Term, 1941, was from August 30 to September 6 (the injunction suit having been filed on Thursday, August 28); that it is the general custom of the lawyers and judges of said court not to set matters for hearing during the first week of the September Term, which in 1941 began on September 8, with Sunday, September 7, intervening; that the second week thereof would start on September 15; that Divisions 2 and 3 of said court are equity divisions, regularly presided over by Judges Flynn and Murphy, respectively; and that these judges, in fixing their vacation periods determined in June, 1941, there should be no return day hearings on orders to show cause prior to September 18, 1941, except on special order by said judges; that respondent Mason had nothing to do with fixing the return date of the order to show cause in this instance.

Respondents further affirm that respondent Mason was as accessible to relators and the City Counselor as they were to him; and that if relators or their counsel had asked respondent Mason to advance the date of hearing on said order to show cause, or filed a motion to dissolve the temporary restraining order, the same could and would have been set for hearing on their application; but that relators and their counsel made no such request and filed no such motion. They further allege relators purposely refrained from exercising their rights in the circuit court, which had original jurisdiction over the injunction suit, and instead sought prohibition in this court.

Respondents further deny said temporary restraining order was issued on snap judgment; and affirm as a matter of contemporary history of which we are asked to take judicial notice, that since May 1, 1941, there have been daily newspaper accounts of the discharge of city employees in St. Louis; that up to September 9, the date of the filing of the return, a total of more than 2500 employees had been discharged solely because of their political affiliations, a vast majority of whom had held their positions for about eight years, and 75% to 80% of whom were in the classified service. As to the law, respondents deny the steps taken in the injunction suit violate Secs. 21, 22 and 23, Art. IX and Art. III of the Constitution. They affirm that said restraining order only forbids relator Baumes from discharging the plaintiffs because of their *political affiliations*; that if any of them are unskillful, dishonest, inebriate, idle or unfaithful he is free to discharge them; and that the order only requires obedience to his oath of office.

In their brief here relators contend that our provisional rule should be made absolute because: (1) a remedy by appeal is both unavailable and inadequate; (2) the restraining order was issued without notice and was made returnable after the date for the

election on the Merit System; (3) the right restrained was a public right, not a private right, and demoralizes the functioning of the Park Department; (4) the restraining order constitutes a usurpation by the judiciary of administrative power in violation of Article III of the Constitution; (5) a court of equity has no jurisdiction to try title to office or position in public office; or to restrain by injunction the removal of a municipal officer or employee; (6) for these reasons the petition fails to state a cause of action and cannot be amended to state one; (7) there is a misjoinder of parties plaintiff in the injunction suit; (8) upon a proper construction of Sec. 7, Art. XVIII with other provisions of the Charter, the plaintiffs could be discharged with or without cause; and the provisions of Sec. 3, Art. VIII, and Sec. 12 of Art. XVIII, concerning relator Baumes' oath of office and forbidding political or religious discrimination, are merely directory.

■ We take up the last point first. The contention that relator Baumes may treat as merely *directory* the oath required of him by Sec. 3, Art. VIII of the Charter—that he will be influenced only by the consideration of *fitness* in the appointment, promotion, demotion, suspension or discharge of officers or employees—is at least debatable. This also is true of the contention that Sec. 12, Art. XVIII of the Charter may be similarly construed with respect to its forbiddance of political or religious discrimination against persons in the classified service or seeking admission thereto. The respondent circuit judges have jurisdiction to construe the Charter, and so questions of construction are not determinative in the prohibition case here.

■ The assignment that the temporary restraining order was issued without notice cannot be sustained. Respondents' jurisdiction, in the sense of power to act, was not conditioned upon a showing of previous notice to relator Baumes. [State ex rel. McMillan v. Woodside, 254 Mo. 580, 591, 163 S. W. 845, 848; State ex rel. Brncic v. Huck, 296 Mo. 374, 386, 246 S. W. 303 305(3); Ex parte Gounis, 304 Mo. 428, 441-2, 263 S. W. 988, 991 (11); Dumm v. Cole County, 315 Mo. 568, 576, 287 S. W. 445, 448 (6, 7); State ex rel. Conran v. Duncan, 333 Mo. 673, 691, 63 S. W. (2d) 135, 143.] It was held in State ex rel. Caron v. Dearing, 291 Mo. 169, 176, 236 S. W. 629, 630, that the issuance of a temporary restraining order without notice was an *abuse* of discretion, where there was no emergency calling therefor and no injunction bond was given. But in the case below a bond was given. Further, relators were (and are) asserting some of the plaintiffs in the injunction suit did not belong to the classified service and were not monthly employees. As to these, they claimed the right of discharge without cause or notice. Beyond that, they made no request in the circuit court for a hearing on the restraining order; and waited for a week before applying for prohibition here. In the circumstances they cannot complain there was no emergency.

There is also no merit in the contention that prohibition should be granted because there was a misjoinder of parties plaintiff in the injunction suit. It was held long ago that "a misjoinder of plaintiffs is not ground to dissolve an injunction, but only of demurrer." [Gill v. Ferris, 82 Mo. 156, 168.] That being true, respondents had jurisdiction.

The contention that the restraining order was made returnable on September 18, two days after the date for the election on the Merit System, is wiped out by respondents' explanation in their return, which must be taken as true for the purposes of this case. It is aided by the fact that relators made no effort to get an earlier hearing on the order, and waited for a week before applying to this court for relief, with the Merit System election at hand.

The real point in the case is whether the respondents had jurisdiction to intervene by injunction to prevent the apprehended discharge of the plaintiffs. Relators say a court of equity will not venture into the political field to try title to public office or employ-ment, or to restrain the removal of a public officer or employee. Sev-eral decisions of this State support relators' contention as to public officers: State ex rel. McCaffrey v. Aloe, 152 Mo. 466, 54 S. W. 494; Arnold v. Henry, 155 ▮▮▮ Mo. 48, 55 S. W. 1089; State ex rel. Allen v. Dawson, 284 Mo. 427, 433, 224 S. W. 824, 826; Civic League v. City of St. Louis (Mo. Div. 2), 223 S. W. 891, 893(3).

But another case, State ex rel. Kansas City v. Lucas, 236 Mo. 18, 30, 139 S. W. 348, 351, holds that doctrine does not apply to civil service employees, in which class the plaintiffs below belong. This decision, written by Judge VALIANT in 1911, was unanimously concurred in by all the judges of the court en banc, and has never been questioned in this State. It was criticised in Sharpe v. City of Los Angeles, 136 Cal. App. 732, 29 Pac. (2d) 797, 800, and that case was followed and cited in Moulton v. Logan, 157 Ore. 406, 72 Pac. (2d) 64, 66(5). But the contrary was held in Ellis v. Holcombe (Tex. Civ. App.), 69 S. W. (2d) 449, as regards civil service employees. It may be true, as held in the Sharpe case, that the technical difference between a public officer and an employee is not determinative of a court's jurisdiction in an injunction suit to restrain discharge of the latter. We may tentatively concede that where an individual employee is discharged for cause, either in conformity with the civil service procedure or in violation of it, he has no cause for injunctive relief, but must resort to mandamus or other appropriate legal remedy.

As to individual complaints we make no decision here. But we are confronted with a case where there is (on the record) a wholesale attempt to violate the provisions of the present Charter of St. Louis; and to discharge civil service employees en masse for political reasons. Relators do not charge that they are incompetent. If it can be done under the present charter, what of the new one to be voted on pres-

448 .

ently? If they can be discharged for political reasons now, why can it not be done again and again in future years under the new charter amendment, if it carries? We do not, of course, know what the amendment provides. Our thought is that if courts of equity in every case are closed to civil service employees threatened with wholesale discharge for political reasons in violation of charter provisions, whatever they are, it would make no difference what the new amendment says; and would breed a multitude of separate suits. We think the ruling in the Lucas case should be followed in this case, whether we would have concurred in it on its own facts, or not. For the reasons stated we conclude our provisional rule in prohibition, heretofore issued, should be quashed. It is so ordered. All concur except *Tipton, J.,* not sitting.