STATE ex rel. Robert MISSEY, Harry Snelling, Lenon C. Amburgy, John Banach, F. Montie Haddox, John Reynolds, Don Wissman, and Waldo Reynolds, on Behalf of Themselves and All Other Members of International Brotherhood of Electrical Workers, Local No. 2, and William Taylor, Lester Gillette, Melvin Geisler, Norman Stogsdill, Omar Reed and William Rives, Relators-Appellants,

v.

The CITY OF CABOOL, a Municipal Corporation, C. J. Tindel, Mayor, Stanley Hanna, Verl Rimel, Gilbert Roberts and Ernest Wall, as Members of its Board of Aldermen, Defendants-Respondents.

Robert MISSEY, Harry Snelling, Lenon C. Amburgy, John Banach, F. Montie Haddox, John Reynolds, Don Wissman and Waldo Reynolds, on Behalf of Themselves and All Other Members of International Brotherhood of Electrical Workers Local No. 2, and Omar Reed and Wayne Morehead, Plaintiffs-Appellants,

v.

The CITY OF CABOOL, a Municipal Corporation, C. J. Tindel, Mayor, Stanley Hanna, Verl Rimel, Gilbert Roberts and Ernest Wall, as Members of its Board of Aldermen, and Ernest J. Barker, Defendants-Respondents.

Nos. 53911, 53927.

Supreme Court of Missouri,

Division No. 1.

April 14, 1969.

Motion for Rehearing or to Transfer to Court En Banc Denied May 12, 1969.

James K. Cook, Schuchat, Cook & Werner, St. Louis, for appellants, Hubert E. Lay, Houston, of counsel.

John Alpers, Jr., Cabool, Donald W. Jones, Church, Prewitt, Jones, Wilson & Karchmer, Springfield, for respondents.

HIGGINS, Commissioner.

Appeals from judgments dismissing action in mandamus, No. 53,911, and for injunction, No. 53,927, involving constitutional questions.

Appellants' petition for writ of mandamus and the court's alternative writ of mandamus (No. 53,911) and their petition for injunction (No. 53,927) were met by respondents' motions to dismiss which the court sustained by judgments of dismissal.

The facts for this review are those well pleaded in the petitions. Bedell v. Daugherty, 362 Mo. 598, 242 S.W.2d 572, 574 [1, 2]. International Brotherhood of Electrical Workers, AFL–CIO, Local 2, is a voluntary, unincorporated association of some 2,000 members. Among its purposes are mutual interests of its members; collective bargaining with public and private employers in Missouri for employees desirous of representation by the union, and maintenance and improvement in wages, hours, conditions of employment and social conditions of all workmen in public and private sectors of the economy.

The relators in No. 53,911 and the plaintiffs in No. 53,927, on behalf of IBEW Local 2, are representatives and agents of Local 2˜holding offices of business manager and financial secretary, president, vice-president, treasurer, recording secretary, and executive board members of Local 2 whose membership is so large that it is impractical to bring all before the court, and these officers have been fairly chosen and adequately and fairly represent the whole class of Local 2 members.

Relators Taylor, Gillette, Geisler, Stogsdill, Reed, and Rives in No. 53,911 are regular employees of the City of Cabool, and plaintiffs Reed and Morehead in No. 53,927 are former regular employees of Cabool who have been discharged.

Respondent Cabool is a city of the fourth class in Texas County, Missouri. Repondents Tindel, Hanna, Rimel, Roberts, and Wall are the mayor and members of the board of aldermen of Cabool. Respondent Barker in No. 53,927 was an employee and agent of the other respondents.

On November 4, 1967, IBEW Local 2 held its first meeting with employees of Cabool, and the relator employees signed cards authorizing the union to represent them in collective bargaining negotiations with the mayor and board of aldermen of Cabool. By letter of that date, mailed November 5, 1967, Local 2 informed the city that it represented a majority of the city's approximately 11 employees in the electrical, park and pool, street and water and sewer departments. Relator employees in No. 53,911 are part of that majority. In the following week the city replied to Local 2 by letter stating it would not meet with it until issues of the appropriateness of the bargaining unit and majority representative status of Local 2 had been resolved. Respondent Barker attended the November 4, 1967, meeting; the respondents mayor and aldermen learned of the meeting on that date and, on November 5, 1967, they learned the identity of all city employees who attended the meeting and signed the authorizing cards. The aldermen held two special meetings Sunday, November 5, 1967, at one of which Barker was in attendance, to consider union activities of city employees.

On or about November 16, 1967, the city laid off relators Gillette and Rives, and reduced the pay of relator Taylor, all effective December 1, 1967. On or about December 1, 1967, the city laid off relators Geisler and Stogsdill and reduced the pay of relator Reed, all effective December 18, 1967. These actions were taken by the city because of the employees' union activities and because these and other employees signed the cards of authority to the union to represent them. These actions affected more than half the employees in the bargaining unit requested by IBEW Local 2, and constituted discrimination against affected employees on account of their exercise of their rights to join labor organizations and to present through their representative, Local 2, proposals to the city relative salaries and other conditions of employment. Such actions were taken to intimidate and coerce relator employees and other employees to refrain from joining Local 2.

With respect to the city's refusal to meet with Local 2 until the questions of appropriateness of bargaining unit and majority representative status had been determined, the state board of mediation held a hearing January 25, 1968, at which the

city was represented by counsel. The board of mediation determined that the bargaining unit requested was appropriate and that IBEW Local 2 represented a majority of the employees in the unit. The city appealed the ruling to this circuit court which has not yet resolved the appeal.

Plaintiff Morehead was the sole witness for the union at the state board of mediation hearing, and he was discharged by the city on or about February 29, 1968. Plaintiff Reed made arrangements for the November 4, 1967, meeting between IBEW Local 2 and city employees and, on or about March 4, 1968, he was discharged by respondent Barker acting within the scope of his employment and agency with the city. Plaintiffs Morehead and Reed were discharged on account of their activities in behalf of the union and their discharges and the other layoffs and demotions were part of a continuing program and plan of the city to intimidate and coerce these and other employees from joining and supporting the union.

Since November 4, 1967, the city aldermen, on their own and through respondent Barker and others, offered selected employees wage increases and other benefits as inducement to withdraw support of, and membership in, Local 2, all of which coercion and intimidation has been undertaken with intent to reduce or destroy the majority representative status of Local 2.

Relator and plaintiff employees are injured and damaged by loss of employment and earnings and by illegal discrimination, coercion, and intimidation intended to compel them to refrain from membership in a labor organization and from presenting proposals to the city through their chosen representative. Local 2 is injured similarly because respondents' actions interfere with the rights of Local 2 to represent these employees having them as members and in presenting proposals to the city in their behalf.

Prior to suit, Local 2, by telegram, on behalf of the injured employees, requested respondents to rescind their actions and make whole and restore all affected employees. The city made no reply and took none of the requested action.

Respondents' actions were charged to be in violation of relators' and plaintiffs' rights under Section 105.510, et seq., V.A.M.S., the First and Fourteenth Amendments to the Constitution of the United States, and Article I, Sections 8 and 9, Constitution of Missouri, V.A.M.S., for which violations they have no adequate remedy at law.

The prayer in No. 53,911 (filed December 16, 1967) was for an alternative writ of mandamus and, after full hearing, an absolute writ directing respondents to rescind their actions in laying off and reducing rates of pay of relator employees, to reinstate them to jobs and pay, and to make them whole for their losses. The alternative writ was issued December 19, 1967, and was quashed on respondents' motion to dismiss by the court's judgment sustaining respondents' motion May 13, 1968.

The prayer in No. 53,927 (filed March 30, 1968) was for a permanent injunction that respondents reinstate plaintiff employees to jobs and rates of pay prior to discharge and to make them whole for losses; that respondents be enjoined from further coercion, intimidation or discrimination against plaintiff employees or other city employees on account of union activity and from interfering with their rights to form and join labor organizations and to present proposals to respondents through chosen representatives; directing respondents to recognize and deal with Local 2 as provided by Sections 105.-510, et seq., V.A.M.S. Respondents' motion to dismiss, filed May 18, 1968, was sustained by the court's judgment of May 24, 1968.

Appellants contend they are entitled to the relief sought because they have statutory and constitutional rights to join

IBEW Local 2 and to have Local 2 represent them in dealing with respondents without reprisal, coercion, or intimidation from respondents. They concede that respondents have the discretion to discharge or lay off employees, or reduce their pay, but contend that such discretion cannot be exercised for the illegal motive or purpose of intimidating and coercing them or other employees from union activities and designating Local 2 as their representative to deal with the city. They support Local 2 as a proper party to join in these suits.

Respondents' position is that the constitutional provisions cited by appellants are inapplicable and have not been violated; and that the statutes involved are invalid as an attempted delegation of the city's legislative powers to a labor union and as special legislation regulating labor and granting labor organizations and members special or exclusive rights. Respondents contend also that for the court to assume jurisdiction of these suits would have been to interfere with the internal administration of the city's legislative body, and that appellants are not entitled to injunction or mandamus, their rights, if any, being appropriately protected by an action at law for reinstatement and back wages.

In 1967, the Missouri legislature enacted House Bill No. 166 (Sections 105.500 to 105.530, V.A.M.S.), which amended and re-enacted existing law enacted in 1965 to provide, among other things: that "Employees except police, deputy sheriffs, Missouri state highway patrolmen, Missouri national guard, all teachers of all Missouri schools, colleges and universities, of any public body shall have the right to form and join labor organizations and to present proposals to any public body relative to salaries and other conditions of employment through the representative of their own choosing. No such employee shall be discharged or discriminated against because of his exercise of such right, nor shall any person or group of persons, directly or indirectly, by intimidation or co-ercion, compel or attempt to compel any such employee to join or refrain from joining a labor organization." Section 105.510, supra.

Whenever proposals as mentioned in Section 105.510, supra, are presented by the exclusive bargaining representative to a public body, that body or its representative "shall meet, confer and discuss such proposals * * * with the labor organization which is the exclusive bargaining representative of its employees in a unit appropriate. Upon the completion of discussions, the results shall be reduced to writing and be presented to the appropriate administrative, legislative or other governing body in the form of an ordinance, resolution, bill or other form required for adoption, modification or rejection." Section 105.520, supra.

"Issues with respect to appropriateness of bargaining units and majority representative status shall be resolved by the state board of mediation. * * * an appeal may be had to the circuit court * * *." Section 105.525, supra.

" 'Appropriate unit' means a unit of employees at any plant or installation or in a craft or in a function of a public body which establishes a clear and identifiable community of interest among the employees concerned; 'Exclusive bargaining representative' means an organization which has been designated or selected by majority of employees in an appropriate unit as the representative of such employees in such unit for purposes of collective bargaining * * *," Section 105.-500, supra, and nothing contained in Sections 105.500 to 105.530 shall be construed as granting a right to strike to employees covered by these sections. Section 105.530, supra.

These provisions express the right of the appellant employees of Cabool to do those things mentioned in their petitions: to join a labor union such as IBEW Local 2 and, as an appropriate unit, to

designate, select and have Local 2 as a representative to present proposals relative to salaries and other conditions of employment to respondent employers; and such employees are to be free from discrimination on account of the exercise of such rights. Equally express are the duty of respondents to meet, confer and discuss such proposals and the preservation of their legislative discretion when they consider the written results of the discussions (collective bargaining) in that they may adopt, modify or reject the results of any such negotiations.

Relator and plaintiff employees of Cabool are also protected in the rights granted by and sought under Sections 105.500 to 105.530, supra, by constitutional principles recognized in Missouri prior to enactment of the statute in that "All citizens (public officers included) have the right, preserved by the First Amendment to the United States Constitution and Sections 8 and 9 of Article I of the 1945 Missouri Constitution * * * to peaceably assemble and organize for any proper purpose, to speak freely and to present their views and desires to any public officer or legislative body." City of Springfield v. Clouse, 356 Mo. 1239, 206 S.W.2d 539, 542 [1]. See also Shelton v. Tucker, 364 U.S. 479, 481–487, 81 S.Ct. 247, 5 L.Ed.2d 231.

■■■ Sections 105.500 et seq., supra, do not purport to give to public employees the right of collective bargaining guaranteed by Section 29, Article I, of the 1945 Constitution to employees in private industry and in the sense that term is usually known with its attendant connotation of unfair labor practice for refusal by the employer to execute and adopt the agreement produced by bargaining, Brotherhood of Painters, etc., Local 1385, 143 NLRB 678, 680, and the use of strike as a bargaining device constitutionally protected to private employees, Div. 1287 Amalgamated Assn. of St. Elec. Ry. and Motor Coach Emp. of America v. State of Missouri, 374 U.S. 74, 83 S.Ct. 1657, 10 L.Ed.2d 763,

but expressly denied by Section 105.530, supra, to public employees. The act does not constitute a delegation or bargaining away to the union of the legislative power of the public body, and therefore does no violence to City of Springfield v. Clouse, supra, 206 S.W.2d l. c. 543 [4], 545–6 [8, 9], because the prior discretion in the legislative body to adopt, modify or reject outright the results of the discussions is untouched. The public employer is not required to agree but is required only to "meet, confer and discuss," a duty already enjoined upon such employer prior to the enactment of this legislation. City of Springfield v. Clouse, supra, l. c. 542–3 [1–3]. The act provides only a procedure for communication between the organization selected by public employees and their employer without requiring adoption of any agreement reached. For discussion of similar enactments, see Kurt L. Hanslowe, The Emerging Law of Labor Relations in Public Employment, New York State School of Industrial and Labor Relations, at Cornell University, ILR Paperback No. 4, October 1967.

■■■ The general assembly is presumed to be aware of existing declarations of law by the supreme court when it enacts law on the same subject, Mack Motor Truck Corp. v. Wolfe, Mo.App., 303 S.W. 2d 697, 701 [5]; Jacoby v. Missouri Valley Drainage Dist., 349 Mo. 818, 163 S.W.2d 930, 938 [8]; and, without indication to the contrary the general assembly must have had the intent to enact this legislation in accord with constitutional principles previously enunciated in City of Springfield v. Clouse, supra, and reiterated in Glidewell v. Hughey, Mo., 314 S.W.2d 749. For these reasons, it is constitutional.

Respondents' contention that they did not discharge and demote appellants on account of union activities is contrary to the record, but they argue that even if respondents had been so motivated, no constitutional rights would have been vio-

lated because they had the discretionary power to do so.

It has been recognized that an employee, in accepting public employment does not have the same rights to union activities as do those in private industry because of the discretion lodged with the public body to lay off and discharge employees, King v. Priest, 357 Mo. 68, 206 S.W.2d 547, 556–557, and there is no quarrel with the many authorities cited by respondents to the effect that courts will not interfere with the legislative body's general discretion. However, it is not necessary "to consider whether an abstract right to public employment exists. It is sufficient to say that constitutional protection does extend to the public servant whose exclusion * * * is patently arbitrary or discriminatory." Wieman v. Updegraff, 344 U.S. 183, 192, 73 S.Ct. 215, 219, 97 L.Ed. 216.

As demonstrated, this act does not purport to give to public employees the same rights to union activities as those enjoyed by employees in private industry and, even though job tenure of public employees is at the discretion of the legislative body, such body cannot exercise that discretion for an illegal purpose such as the violation of statutory rights granted appellant employees. State ex rel. Keystone Laundry and Dry Cleaners v. McDonnell, Mo., 426 S.W.2d 11. In Ball v. City Council of City of Coachella, 252 Cal.App.2d 136, 60 Cal.Rptr. 139, a police chief sued in mandamus for reinstatement and back pay and the defense was discretionary power to fire. The court recognized the discretion of the city but held that such authority could not be exercised in violation of constitutional or statutory rights to engage in union activities. Schenck v. Ormsby, 24 A.D.2d 467, 260 N.Y.S.2d 266, held that a superintendent could not refuse to reappoint a probationary teacher because he joined the "wrong" union. The court recognized that the superintendent might act for an in-sufficient or capricious reason, but that he could not act for an illegal reason.

Upon the present record the only motive and purpose of respondents in laying off and reducing pay of appellant employees was to discriminate against and intimidate them for joining and having Local 2 represent them in dealing with respondents, clearly a violation of their rights under Sections 8 and 9, Article I, Constitution of Missouri, and Sections 105.-500, et seq., supra, V.A.M.S. Quinn v. Buchanan, Mo., 298 S.W.2d 413.

Respondents' theory of defense and contention under their discretionary powers have been answered most recently in American Federation of State, County and Municipal Employees, AFL–CIO v. Milton Woodward, 8 Cir., 406 F.2d 137 (January 17, 1969). A number of employees in the North Platte, Nebraska, street department alleged that as a result of a union campaign they joined the union and that, upon learning and on account of their union activities, the street department commissioner, Woodward, dismissed them or reduced their pay. Their complaint, alleging deprivation of constitutional rights under the Civil Rights Act of 1871, was dismissed for failure to state a claim. The issue was whether public employees, discharged because they joined a labor union, have a right of action for damages and injunction under the act against the discharging official. The answer depended upon whether public employees have a constitutionally protected right to belong to a labor union. The court of appeals answered in the affirmative and reversed the district court on the ground that such rights existed under the First Amendment and were applicable to the states under the Fourteenth Amendment. Although without occasion to rule the issue of this case previously, this federal court ruling in point has been foreshadowed by Missouri's own decisions in City of Springfield v. Clouse, supra, Quinn v. Buchanan,

supra, and Smith v. Arthur C. Baue Funeral Home, Mo., 370 S.W.2d 249.

■ Respondents' remaining charge of invalidity of the act is that these statutes constitute special laws regulating labor and granting special or exclusive rights where general law can be made applicable in violation of Section 40, subsections (27), (28), and (30), Article III, Missouri Constitution. The argument is that this is a special law "for it is a law touching upon labor organization rights of certain public employees but excludes entirely some public employees similarly situated, and similarly situated in private employment"; and because these statutes "purport to grant to each labor organization * * * designated as the bargaining representative of public employees in a particular unit, an exclusive right of bargaining * * * (which) violates our entire concept of representative government, where each citizen is to have equal rights to petition his legislative representatives concerning legislative matters. * * * The constitutional right of private citizens, and public employees who do not choose to belong to a labor organization, are sacrificed in order to confer these 'exclusive rights' on the labor representative." It is argued also that the classification of persons in the act is arbitrary and unreasonable.

Respondents' premise in respect to private employees is faulty because private employees, under Article I, Section 29, Missouri Constitution, already have the right to organize and bargain collectively in the usual sense through representatives of their own choosing. City of Springfield v. Clouse, supra.

■ With respect to the charge of arbitrary and unconstitutional classification in the exclusion of police, deputy sheriffs, highway patrolmen, national guardsmen, and teachers from benefits of the act, it is noted that, except for teachers, the excluded class is that of police or those exercising police functions and, as such, are an appropriate classification, being *sui generis*. King v. Priest, supra, 206 S.W.2d 1. c. 554–555. The exclusion of teachers from this act is consistent with provisions applicable only to teachers in other areas, e. g., special pensions rights, Chapter 169, V.A.M.S., and certification procedures, Chapter 168, V.A.M.S. Similar distinctions have been made in other states, Hanslowe, supra, p. 53, and respondents have cited no authority holding exclusion of teachers from a statute dealing with public employment to be unconstitutional classification. Note also that when a legislative classification is questioned, if any state of facts reasonably can be conceived that would sustain it, there is a presumption of the existence of that state of facts, and the burden of showing arbitrary action rests upon the one who assails the classification. Professional Fire Fighters, Inc. v. City of Los Angeles, Calif., 60 Cal.2d 296, 32 Cal.Rptr. 830, 384 P.2d 158, 166; Walters v. City of St. Louis, 364 Mo. 56, 259 S.W.2d 377, 386 [11].

■ Nor is the provision for the public agency to meet and discuss with the bargaining representative a violation of representative government. The statute provides only that a majority of employees in a unit may have an exclusive bargaining representative and who it shall be. There is no provision against the remaining employees presenting their differing views to the governing body and it already has been demonstrated that such right is guaranteed by constitutional provisions.

It remains to be determined whether mandamus and injunction are appropriate forms of action for relief of appellant employees.

■ "Mandamus is the usual remedy, and it is axiomatic that it will lie in all proper cases to compel reinstatement of an officer or employee illegally removed or discharged." 4 McQuillin, Municipal Corporations (1968 Rev.) § 12.269c. Consist-

ent with this rule, if the removal of a public employee is illegal on any ground, he is entitled to reinstatement and restoration of lost earnings, State ex rel. Stomp v. Kansas City, 313 Mo. 352, 281 S.W. 426, where a fireman was accorded such right in a mandamus action. See also: State ex rel. Chapman v. Walbridge, 153 Mo. 194, 54 S.W. 447; State ex rel. Lindsay v. Kansas City, Mo.App., 20 S.W. 2d 1. Even though "the writ will not ordinarily issue to control the discretion of a court or * * * body acting within its jurisdiction * * * [a]n exception * * * is recognized where the * * * board (or court) has acted unlawfully or * * * outside * * * or has exceeded its jurisdiction * * *. 'Mandamus is applicable to compel the doing of that which is right * * * though it may sometimes have the effect of rescinding that which was wrong. And where acts of public officers in respect to public rights are involved, the good faith and solemn belief of the officer should not be concerned where there has been an abuse of discretion accomplished by disobedience of the law.' * * * ordinarily mandamus does not lie where other remedies are available. But such other remedies must be adequate and equally efficient." State ex rel. Keystone Laundry v. McDonnell, supra, 426 S.W.2d l. c. 14–15 [1–5].

Under this record the city's discharges and demotions of appellant employees for union activities were illegal and void because in violation of both statutory and constitutional rights; and since they are entitled to more than recovery of wages in the event of void and illegal acts on the part of the city, appellant employees would be also entitled to mandamus for rescission of the city's actions and their reinstatement. The presence of disputed issues would not preclude an action in mandamus because the issuing court shall try any issue joined in the proceedings. Civil Rule 94.05. See State ex rel. Lindsay v.

Kansas City, supra, and State ex rel. Rundberg v. Kansas City, 206 Mo.App. 17, 226 S.W. 986, where in mandamus actions the court tried the issue whether relators' discharges were for political activities, a question analogous to the issue of union activities. See also Professional Fire Fighters, Inc. v. City of Los Angeles, supra, and International Assn. of Fire Fighters, Local No. 1396, AFL–CIO v. County of Merced, 204 Cal.App.2d 387, 22 Cal.Rptr. 270, where firemen allegedly discharged for discriminatory reasons were permitted to litigate the disputed question of fact of discrimination in their mandamus actions. To hold otherwise would be to permit the city to discriminatorily lay off employees for union activities, risk the possible action at law for wages alone, and gamble that ridding itself of organization employees with a union representative would be worth the damages assessed. The public employer would thus succeed in reducing the number of union affiliates in its employ and would enable it to nullify the union's ability to retain its status as majority representative. Cf. Smith v. Baue Funeral Home, supra; American Fire Alarm Co. v. Board of Police Commissioners of Kansas City, 285 Mo. 581, 227 S.W. 114.

IBEW Local 2 also has a stake in these actions and its interest cannot be protected by an action at law by the discharged employees for their back pay alone. It is a proper party to these suits to enforce its and its members' rights. Quinn v. Buchanan, supra, 298 S.W.2d l. c. 417–418 [7–9]; Professional Fire Fighters, Inc. v. City of Los Angeles, supra.

Respondents argue that before appellants could have any rights to be enforced against respondents by mandamus, they first must establish that they have been illegally discharged and are entitled to enforce an established or prior right. They cite a number of cases in support of this argument but it is not necessary to discuss

the point or the citations because, upon this record, the prior right and violation of it by illegal discharge are established by appellants' pleadings.

 Courts have power to grant injunctions where a municipal employer engaged in wholesale violation of its employees' rights. See State ex rel. and to Use of Baumes v. Mason, 348 Mo. 436, 154 S.W.2d 67, and State ex rel. Kansas City v. Lucas, 236 Mo. 18, 139 S.W. 348, where writs of prohibition were sought by the municipal employer to abrogate prior injunctive relief and the writs were denied. This record does not deal with the number of employees involved in the St. Louis and Kansas City situations above but, in percentage, the unlawful discharges are equally wholesale. The irreparable harm done by acting unlawfully to impede organization of public employees has been recognized as a subject for injunctive relief elsewhere, e. g., Professional Fire Fighters, Inc. v. City of Los Angeles, supra; Lavasseur v. Wheeldon, 79 S.D. 442, 112 N.W. 2d 894.

 Upon this record it is seen that respondents engaged in a continuing course of activity from November 5, 1967, through the decision in these cases in May, 1968, refusing to recognize IBEW Local 2 as their majority employees' representative and laying off and demoting employees discriminatorily for union activities. Such activities violate the requirement of the act that respondents meet and confer with the employees' representative and to avoid discrimination against employees on account of union activities and, in seeking injunction, the employees ask that the city be enjoined from discrimination in violation of the act and that respondents be directed to recognize the employees' representative. They do not seek to compel the city to enter into a collective bargaining agreement in violation of City of Springfield v. Clouse, supra, or of their statutory reservation to adopt, modify, or reject any agreements reached in negotiation as their discretion may indicate. Reinstatement would also be appropriate injunctive relief if not granted in the mandamus action. Mandatory orders requiring similar acts have been approved in Pittsburgh City Fire Fighters, Local 1 v. Barr, 408 Pa. 325, 184 A.2d 588; International Association of Fire Fighters, Local 1319, AFL–CIO v. City of Palo Alto, 60 Cal.2d 295, 32 Cal.Rptr. 842, 384 P.2d 170, 53 LRRM 2985; Professional Fire Fighters, Inc. v. City of Los Angeles, supra; School Committee v. Pawtucket Teachers Alliance, R.I., 221 A.2d 806; and Missouri courts, of course, recognize the propriety of injunctive relief in cases of irreparable harm as appears on the present state of this record.

The injunction suit is not premature on account of the appeal pending from the decision of the board of mediation under the act because, aside from the statutory obligation of respondents to meet and confer with their employees' majority representative, it has been demonstrated that they have a constitutional duty to meet and consider their proposals and it is independently enforceable.

Reversed and remanded.

HOUSER and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.