[Civ. No. 117. Fifth Dist. June 4, 1962.]

INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, LOCAL NO. 1396, AFL-CIO, et al., Plaintiffs and Appellants, v. COUNTY OF MERCED et al., Defendants and Respondents.

Charles P. Scully and Victor Van Bourg for Plaintiffs and Appellants.

George D. Murphy, Jr., County Counsel, for Defendants and Respondents.

CONLEY, P. J.—International Association of Fire Fighters, Local No. 1396, AFL-CIO, and Monroe L. Johnson appeal from a judgment which denied them a writ of mandate directed to the County of Merced, its board of supervisors and C. H. Vaughn, Chief of the Merced County Fire Department, requiring a change in certain policies that allegedly are contrary to the state law which permits firemen to join a union and compelling the reinstatement as a captain of the fire department of Monroe L. Johnson, who was allegedly discharged because of his activities on behalf of the labor organization.

The petition for the writ alleges that C. H. Vaughn is the Chief of the Fire Department of the County of Merced, and that Arthur Ferrari, Harry P. Schmidt, William Wade Morgan, Neill Gallaway and Emory O'Banion are the members of the board of supervisors of the county.

The petition further states that the union is a voluntary, unincorporated association, formed pursuant to California law, and that all of the members of the local are employees of the Merced County Fire Department; that Monroe L. Johnson is a member and secretary of the organization; and that all of his activities were carried on by him as the agent and representative of the union.

According to the pleading the respondents have established and presently maintain in effect policies and rules and regulations that

". . . are designed, intended to and do deny and obstruct the right of fire fighters in the exercise of their freedom of self-organization, freedom to form, join or assist labor organizations, freedom to present grievances and recommendations regarding wages, salaries, hours and working conditions to the governing body of the Fire Department and to discuss

the same with such governing body through such an organization; . . ."

And

"That at all times material hereto respondents, and each of them, have established and maintained policies and promulgated rules and regulations which have and do discriminate against members and potential members of the Union . . . by intimidating and interrogating . . . employees with respect to their status as Union members and with respect to their intention to become or remain members of the Union, and by intimidating and forcing members of the Union to resign their membership under threat of penalties, demotions and termination of employment."

It is further alleged that on May 12, 1961, the petitioner Monroe L. Johnson was discharged solely because of his activities on behalf of the union, and that the respondents ". . . acted arbitrarily, capriciously, erroneously and contrary to the provisions of the applicable . . ." laws of the State of California, and particularly contrary to the provisions of sections 1960 to 1963 of the Labor Code.

Petitioners pray that the respondents be required to vacate and set aside all policies, rules and regulations ". . . which prohibit employees of the Fire Department of Merced to join and become members of and to remain members of bona fide labor organizations and which prohibit relationships between such employees and such labor organizations and between such labor organizations and respondents, or any of them," and which run counter to the policy of the State of California as set forth in the provisions of the Labor Code, and to reinstate Monroe L. Johnson as a Captain of the Fire Department of the County of Merced.

The alternative writ of mandate was issued as prayed. An answer and return was filed and the hearing conducted, followed by the filing of a memorandum opinion, findings of fact and conclusions of law and a judgment denying the relief sought by petitioners. The court found that none of the respondents discriminated against the union or failed to comply with the law of the state relative to the right of employees to join the union, and further found that Captain Johnson was not dismissed because of his activities on behalf of the labor organization.

At the time of the events here in question there was no civil service ordinance in effect in Merced County, and there

was no prescribed administrative machinery for an appeal. The Chief of the Fire Department, Mr. Vaughn, apparently was given absolute and unfettered control of the right to hire and discharge employees and to make oral rules and to implement policies for the conduct of the department. The supervisors left all of these matters wholly to Mr. Vaughn, and in the circumstances we necessarily conclude that they are bound by his acts and omissions as to rules and policies in the fire department.

In the course of his activities, however, Mr. Vaughn could not fail to comply with the mandate of the State of California incorporated in sections 1960 to 1963, inclusive, of the Labor Code:

Section 1960. "Neither the State nor any county, political subdivision, incorporated city, town, nor any other municipal corporation shall prohibit, deny or obstruct the right to firefighters to join any bona fide labor organization of their own choice."

Section 1961. "As used in this chapter, the term 'employees' means the employees of the fire departments and fire services of the State, counties, cities, cities and counties, districts, and other political subdivisions of the State."

Section 1962. "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to present grievances and recommendations regarding wages, salaries, hours, and working conditions to the governing body, and to discuss the same with such governing body, through such an organization, but shall not have the right to strike, or to recognize a picket line of a labor organization while in the course of the performance of their official duties."

Section 1963. "The enactment of this chapter shall not be construed as making the provisions of Section 923 of this code applicable to public employees."

These quoted sections, added to the Labor Code in 1959, effected a change in our law, which previously had held that public servants, such as the Merced County firemen, could be forbidden to join labor unions. (*Perez* v. *Board of Police Comrs.*, 78 Cal.App.2d 638 [178 P.2d 537].) The right to become union members is now guaranteed by law to firemen, and this right cannot be whittled down by unfair practices, threats or discrimination on the part of those in command.

In January 1961 the board of supervisors passed a resolu-

tion that conformed with the requirements of the state law as to union membership, but strangely enough, Mr. Vaughn did not recall ever having seen or heard of the resolution. The resolution of the board of supervisors was commendable in its recognition of the applicable law, but, as the old saying goes, "Actions speak louder than words." And it is impossible for any fair-minded person who reads the record in this case to escape the conviction that Mr. Vaughn was at all times motivated by his dislike for outside labor organizations and that he did everything in his power to obstruct and discourage the institution of a union local by the firemen. When Monroe Johnson first mentioned to him the possibility of forming a union, about May 2, 1961, the chief told him, "We don't want any unions in the Fire Department. I will have nothing to do with them"; Vaughn further said at that time that ". . . he had thrown guys out of the station before there for this same thing [the union], . . . and . . . he wouldn't have any union in his organization and if any union man came around in his station, that he would throw him right out in the street. . . ." Mr. Johnson continued his organizational activities, and at 8:01 a. m. on May 12, Chief Vaughn dismissed him without further warning.

Chief Vaughn testified that he was a member of the Merced County Employees' Association (which in a sense was a competitor of the petitioning union); that he permitted that association to solicit memberships among the employees of the fire department while they were on duty, and that on one occasion the employees on the off-coming shift were actually held over to permit the solicitation of memberships in the association; that while on duty as chief of the department he made speeches at the meetings attended by on-duty firemen subject to his control soliciting their membership in the Merced County Employees' Association; that he called a meeting of the fire department employees while they were on duty at which he made a speech against the union and advised the employees not to join; that after discharging Monroe Johnson he interrogated fire department employees on May 16 about payment of dues to the union and the use of the money so paid by them; and he admitted that he told the employees that ". . . I didn't see where they would gain anything, that all they were doing was paying dues, because the County Association can do just as much for them as the union"; that no rule prohibiting solicitation of members of organizations of

employees was promulgated or enforced until after the petitioner union began organizing and Mr. Johnson had been discharged, and that no one had ever been prohibited from soliciting membership in an employee organization prior to that time. Chief Vaughn said that he felt it was all right to interrupt men on duty to discuss the Merced County Employees' Association, because it was "part of our welfare and benefit," but that the union should not be discussed on duty, because it was not for the welfare and benefit of the men and the department.

The record shows without contradiction that Chief Vaughn told several employees of the department that if they did not pay their dues to the union they would keep their jobs. Mr. Ford, one of the department employees, was threatened by the chief, who told him to "stay away from them [the union]," and if he stayed away from the union he would keep his job. One of the subordinate chiefs under Chief Vaughn, Chief Wrobel, advised one of the witnesses, McCartney "to get out and stay out" of the union.

In view of the fact that the provisions of section 1962 of the Labor Code are in part identical with the provisions of section 7 of the federal Labor Management Relations Act, the construction placed upon the language, "Employees shall have the right to self-organization, to form, join, or assist labor organizations . . ." by the United States Supreme Court is helpful in determining the connotation of that language as used in our Labor Code. The Supreme Court of the United States has recognized that it is the right of employees and of the labor unions involved that the latter should have a reasonable opportunity for the exposition of their ideas and plans of organization. In *National Labor Relations Board* v. *Babcock & Wilcox Co.*, 351 U.S. 105 [76 S.Ct. 679, 100 L.Ed. 975], at page 685 [of 76 S.Ct.] the court says in part:

"The right of self-organization depends in some measure on the ability of employees to learn the advantages of self-organization from others. Consequently, if the location of a plant and the living quarters of the employees place the employees beyond the reach of reasonable union efforts to communicate with them, the employer must allow the union to approach his employees on his property."

In *Mastro Plastics Corp.* v. *National Labor Relations Board*, 350 U.S. 270 [76 S.Ct. 349, 100 L.Ed. 309], it is held that an employer abrogates the rights of his employees to

self-organization when it vigorously attempts to influence or coerce employees either not to join a union or to abandon membership after they have joined.

In *Radio Officers' Union, C.T.U.* v. *National Labor Relations Board*, 347 U.S. 17 [74 S.Ct. 323, 98 L.Ed. 455, 41 A.L.R.2d 621], the majority, speaking through Mr. Justice Reed, points out that it is never essential to make specific proof of antiunion intent where the employer's conduct inherently discourages union membership.

 Specifically, it appears to us that the findings that ". . . respondents have no policies . . . obstructing the right of fire fighters to join bona fide labor organizations of their choice; . . ." are contrary to the established evidence in the case.

We have reached the conclusion from a careful consideration of the entire record that the trial court must not have kept in mind the fact that the actions and omissions of the chief of the fire department at variance with the requirements of the Labor Code were binding upon the other respondents and that they should be required in the future to observe the strict injunction of the law with respect to permitting the members of the fire department to join a union, and to that end to allow them to discuss with each other at all fitting times the advisability of applying for membership in proposed labor organizations. The chief of the fire department and all other respondent officials of the County of Merced must carry out the laws of this state permitting firemen to join such organizations freely, without fear of discharge or the infliction of any other sanction.

The trial court should receive evidence as to the content and effect of the present rules and policies of the fire department with respect to solicitation of union membership during on-duty hours; such rules and policies may properly provide for reasonable restrictions to insure discipline and efficiency, but apart from such considerations they must not infringe upon the right to organize or to discuss freely any such proposed organization. As is said in *National Labor Relations Board* v. *Babcock & Wilcox Co., supra*, 351 U.S. 105 [76 S.Ct. 679, 100 L.Ed. 975], at page 685 [of 76 S.Ct.]: "No restriction may be placed on the employees' right to discuss self-organization among themselves, unless the employer can demonstrate that a restriction is necessary to maintain production or discipline."

 And no policy of discrimination against men who have exercised their right to organize should be tolerated. (*National Labor Relations Board* v. *Jones & Laughlin Steel Corp.*, 301 U.S. 1 [57 S.Ct. 615, 622, 81 L.Ed. 893, 108 A.L.R. 1352].)

 Passing to the question whether Mr. Johnson was properly discharged, we feel that the court's finding that ". . . the dismissal of petitioner was not due to his activities for or on behalf of the union" is not supported by the record. The reasons given by the chief for terminating Johnson's employment all grow out of his union activities. The claim is made that his employment was ended for two specific reasons, namely, that he made incorrect statements that some of the chiefs of the fire department were in favor of the union and that he interfered with the work of department employees by soliciting their membership while they were on duty.

The evidence shows that Johnson had a service record of many years' standing and that within a few months prior to his discharge he had been elevated to a captaincy. This fact indicates that he did his public work intelligently and efficiently. As to the claim that he was discharged because of the alleged fact that he misrepresented the attitude of one or more of the seven chiefs of the department toward the proposed union organization, there is no proof that he was not merely stating an opinion based on his understanding or on the reports of others, or that his statements were not basically true. In fact, one of the chiefs, Chief Painter, who was in the court room during the trial and who was said to have been in favor of the union, was not even called to the stand by defendants, and he did not deny the allegation. Respondents should have proved, if they were able to do so, that the statements alleged to have been made by Captain Johnson were not in fact true and that Johnson knew or should have known that they were not true in order to justify his discharge. For, a man is not a liar who tells the truth or who does not know or have reason to believe that what he says in good faith is not true.

· With respect to the charge that Johnson "talked union" to men on duty thus interfering with their work, it should be kept in mind that a fireman's occupation is much like a soldier's. His essential function is carried out during an unpredictable series of crises with long intervening gaps of quiescence. When a fire occurs, he performs his expert work

under extreme pressure; it then involves the skill of a trained executant, exposed to the constant possibility of injury or even death in the course of duty. But the waiting periods are long and boring, and he is not required to stand at attention during those intervals; if he does not interfere with the active duties of himself or his fellow workers, he has the right of every free American to talk with his associates and to discuss matters of mutual concern. Every citizen, within the limits of law, may say what he pleases when he pleases.

The evidence shows that the communications of Johnson to his fellow workers were sometimes made in the course of their on-duty employment; it is true that if a fire had occurred while they were waiting they would have had to go to it and fight it; but there was no showing that any such conversations occurred when concentration on their duties would prevent them from talking about these matters of mutual concern. Certainly, if a fireman were fighting a blaze in a burning building it would be unthinkable that anyone should then talk union membership to him. But when he is on duty at the firehouse merely awaiting the possibility of a call to a fire, which may not come for a day or a month, it is not improper for a fellow employee to discuss with him the pros and cons of joining a labor organization. In one instance one of the firemen stated in a letter received in evidence that he was repairing a part on a fire truck at the time that Mr. Johnson talked with him, but there was no showing that there was a time limit on the completion of the work or that he was under pressure to finish the job, or that the talk essentially interfered with his work.

Upon retrial there should be a close scrutiny of the reasons advanced for Captain Johnson's discharge, and if the termination of his employment was effected because of legitimate activities as defined herein on behalf of the formation of the union, he should be reinstated.

The judgment is reversed.

Brown, J., and Stone, J., concurred.

A petition for a rehearing was denied June 29, 1962.